OPINION OF THE COURT
 

 Rosenblatt, J.
 

 The case before us involves a challenge to New York’s long-arm jurisdiction. Plaintiff, a Town of Niagara employee, sued defendant Pak-Mor Manufacturing Company, a Texas corporation, alleging that he was injured when he fell from a sanitation truck equipped with a defective Pak-Mor loading device. Plaintiff alleged negligence, breach of warranty, failure to warn and strict products liability. Pak-Mor moved to dismiss for lack of personal jurisdiction. Supreme Court granted the motion and the Appellate Division affirmed.
 
 [1]
 
 For reasons that follow, we conclude that the exercise of long-arm jurisdiction over Pak-Mor is compatible with both CPLR 302 and due process. Accordingly, we reverse.
 

 Pak-Mor is a Texas corporation that manufactures garbage hauling equipment. It has a manufacturing facility in Virginia. The company has no property, offices, telephone numbers or employees in this State. It does, however, maintain a New York distributor, Truckmobile Equipment Corp., and a district representative. In the year of the accident, Pak-Mor’s total sales revenue was $18,245,292, $514,490 of which was derived from New York. The company advertised in nationally published trade magazines using a logo that read “Sanitation for the Nation.” It also offered warranties and provided troubleshooting advice to the ultimate purchasers of its equipment.
 

 Pak-Mor sold the allegedly faulty rear-loading device to its New York distributor, which in turn sold it to the Town of Niagara. Its “invoice and final inspection sheet” indicates that the rear-loader was destined for Niagara, New York. The document also lists a “New York Light Bar” under the heading “Additional or Special Information.” Pak-Mor installed the device
 
 *214
 
 on the truck at its Virginia facility. Its distributor picked up the truck in Virginia and delivered it to the Town of Niagara. Several months later, plaintiff was injured when he fell off the back of the truck while standing on the riding platform of the rear-loader.
 

 To determine whether a non-domiciliary may be sued in New York, we first determine whether our long-arm statute (CPLR 302) confers jurisdiction over it in light of its contacts with this State. If the defendant’s relationship with New York falls within the terms of CPLR 302, we determine whether the exercise of jurisdiction comports with due process.
 

 New York’s Long-Arm Statute
 

 CPLR 302 (a) provides:
 

 “As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary * * * who * * *:
 

 “3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he * * *
 

 “(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce” (CPLR 302 [a] [3] [ii]).
 

 The conferral of jurisdiction under this provision rests on five elements: First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce.
 

 No one disputes the first three elements. Plaintiff has alleged that his cause of action arises from defendant’s tortious acts outside the State, which caused him injury in Niagara, New York. The fourth element — contemplating “in-State consequences” — is met when “[t]he nonresident tortfeasor * * * expect [s], or ha[s] reason to expect, that his or her tortious activity in another State will have
 
 direct
 
 consequences in New York”
 
 (Ingraham v Carroll,
 
 90 NY2d 592, 598 [emphasis add
 
 *215
 
 ed]). The element “is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere”
 
 (Ingraham v Carroll,
 
 90 NY2d, at 598,
 
 supra).
 
 Moreover, the defendant need not foresee the specific event that produced the alleged injury. The defendant need only reasonably foresee that any defect in its product would have direct consequences within the State
 
 (see,
 
 12th Ann Report of NY Jud Conf, at 343-344;
 
 see generally,
 
 Siegel, NY Prac § 88, at 151 [3d ed]).
 

 Pak-Mor’s invoice, including its reference to a “New York Light Bar,” shows that it knew the rear-loader was destined for use in New York. Clearly, Pak-Mor had reason to expect that any defects would have direct consequences in this State.
 

 The fifth element — defendant’s deriving substantial revenue from interstate or international commerce — is designed to narrow “the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but ‘whose business operations are of a local character’ ”
 
 (Ingraham v Carroll,
 
 90 NY2d, at 599,
 
 supra
 
 [quoting 12th Ann Report of NY Jud Conf, at 342-343]). Therefore, in
 
 Ingraham,
 
 we held that a physician who practiced only in Vermont and earned his entire revenue from his local medical services did not derive “substantial interstate revenue” as contemplated by CPLR 302 (a) (3) (ii).
 

 By contrast, Pak-Mor’s business can hardly be characterized as “local.” A Texas corporation with a manufacturing facility in Virginia is inherently engaged in interstate commerce. Moreover, the company had a New York distributor and a district representative. Its national advertising and New York sales figures alone show that the company derives substantial revenue from interstate commerce.
 
 [2]
 

 In short, we have no difficulty in concluding that CPLR 302 (a) (3) (ii) was satisfied in this case. Pak-Mor derived substan
 
 *216
 
 tial revenue from interstate commerce and the circumstances surrounding its sale of the subject rear-loader gave it reason to expect that its acts in connection with the manufacture of the rear-loader would have consequences in this State.
 

 Because CPLR 302 (a) (3) (ii) did not authorize jurisdiction over the defendant in
 
 Ingraham (supra),
 
 we had no need to consider Federal due process. Here, we do.
 

 Due Process: “Minimum Contacts” and “Fair Play and Substantial Justice”
 

 In
 
 International Shoe Co. v State of Wash.
 
 (326 US 310), the United States Supreme Court held that a State may constitutionally exercise jurisdiction over non-domiciliary defendants, provided they had “certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice’ ”
 
 (International Shoe Co. v State of Wash.,
 
 326 US, at 316,
 
 supra
 
 [quoting
 
 Milliken v Meyer,
 
 311 US 457, 463]). Under the Due Process Clause, the standards of “minimum contacts” and “fair play and substantial justice” are implicated in the decisional law governing personal jurisdiction. We therefore discuss both.
 

 Due process is not satisfied unless a non-domiciliary has “minimum contacts” with the forum State. The test has come to rest on whether a defendant’s “conduct and connection with the forum State” are such that it “should reasonably anticipate being haled into court there”
 
 (World-Wide Volkswagen Corp. v Woodson,
 
 444 US 286, 297;
 
 see also, Kulko v Superior Ct. of Cal.,
 
 436 US 84, 97-98). A non-domiciliary tortfeasor has “minimum contacts” with the forum State — and may thus reasonably foresee the prospect of defending a suit there — if it “ ‘purposefully avails itself of the privilege of conducting activities within the forum State’”
 
 (see, World-Wide Volkswagen Corp. v Woodson,
 
 444 US, at 297,
 
 supra
 
 [quoting
 
 Hanson v Denckla,
 
 357 US 235, 253];
 
 see also, Burger King Corp. v Rudzewicz,
 
 471 US 462, 475).
 

 The United States Supreme Court’s decision in
 
 World-Wide Volkswagen
 
 (444 US 286,
 
 supra)
 
 illustrates the application of this standard. There, a New York automobile retail dealer sold a car to plaintiffs, a family in New York (444 US, at 288,
 
 supra).
 
 While driving through Oklahoma on the way to Arizona, plaintiffs had an accident and sued the dealer (and its wholesaler) in Oklahoma (444 US, at 288,
 
 supra).
 
 Jurisdiction failed because the New York defendants could not reasonably foresee
 
 *217
 
 being sued in Oklahoma based on “the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma” (444 US, at 295,
 
 supra).
 

 The Supreme Court, however, distinguished cases in which manufacturers purposefully direct their products into the forum State:
 

 “if the sale of a product of a manufacturer or distributor * * * is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor
 
 to serve directly or indirectly,
 
 the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others” (444 US, at 297,
 
 supra
 
 [emphasis added]).
 

 Pak-Mor argues that it had no contacts or purposeful affiliation with New York, asserting that “it did not direct activities at New York residents” and that it “performed manufacturing in Virginia for customers who paid, received title and accepted delivery in Virginia.” This may be true, but it is far from dispositive. Unlike the defendant in
 
 World-Wide Volkswagen Corp.,
 
 Pak-Mor itself forged the ties with New York. It took purposeful action, motivated by the entirely understandable wish to sell its products here. This contrasts with cases in which the defendant’s connection with the forum State resulted from decisions made by others, as in
 
 World-Wide Volkswagen Corp.,
 
 where the plaintiff customer chose to drive to the forum State (444 US, at 288, 295,
 
 supra)
 
 or where, in a child support case, the plaintiff former spouse chose to settle in the forum State
 
 (see, Kulko v Superior Ct. of Cal.,
 
 436 US, at 86-87,
 
 supra).
 
 In all, Pak-Mor had every reason to foresee that its self-initiated contact with New York raised the prospect of defending this suit.
 

 Minimum contacts alone do not satisfy due process. The prospect of defending a suit in the forum State must also comport with traditional notions of “ ‘fair play and substantial justice’ ”
 
 (Burger King Corp. v Rudzewicz,
 
 471 US, at 476,
 
 supra
 
 [quoting
 
 International Shoe Co. v State of Wash.,
 
 326 US, at 320,
 
 supra]).
 
 This is in essence another way of asking what is reasonable. Indeed, a defendant “who purposefully has directed [its] activities at forum residents * * * must present a compelling case that the presence of some other considerations would
 
 *218
 
 render jurisdiction unreasonable”
 
 (Burger King Corp. v Rudzewicz,
 
 471 US, at 477,
 
 supra).
 

 In
 
 Asahi Metal Indus. Co. v Superior Ct. of Cal.,
 
 the Supreme Court articulated the test:
 

 “A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff’s interest in obtaining relief. It must also weigh in its determination ‘the interstate judicial system’s interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies’ ” (480 US 102, 113 [quoting
 
 World-Wide Volkswagen Corp. v Woodson,
 
 444 US, at 292,
 
 supra]).
 

 [3]
 

 In
 
 Asahi,
 
 Cheng Shin, a Taiwanese tire tube manufacturer defending a California product liability action, attempted to implead Asahi, a Japanese corporation that had manufactured tire valve assemblies for Cheng Shin’s tubes in Japan (480 US, at 106,
 
 supra).
 
 Asahi allegedly knew that Cheng Shin distributed its tubes around the world, but resisted personal jurisdiction on the ground that it had performed all of its work in Japan with no reasonable expectation of being sued in California (480 US, at 107,
 
 supra).
 
 The Supreme Court concluded that subjecting Asahi to jurisdiction in California would be unreasonable.
 

 Pak-Mor is no Asahi. Its posture toward New York is considerably different from Asahi’s posture toward California. Asahi was a Japanese corporation doing business with a Taiwanese tire tube manufacturer, whereas Pak-Mor is a Texas corporation that maintains a manufacturing facility in Virginia and used a New York distributor. The burden on Pak-Mor is not great. Unlike Asahi, Pak-Mor is a United States corporation fully familiar with this country’s legal system. Moreover, New York has an interest in providing a convenient forum for LaMarca, a New York resident who was injured in New York and may be entitled to relief under New York law. In
 
 Asahi,
 
 the main action had been settled and all that remained was Cheng Shin’s indemnification claim against Asahi (480 US, at 114,
 
 supra).
 
 Finally, it would be orderly to allow plaintiff to
 
 *219
 
 sue all named defendants in New York. A single action would promote the interstate judicial system’s shared interests in obtaining the most efficient resolution of the controversy.
 

 Fair play involves a set of corresponding rights and obligations. When a company of Pak-Mor’s size and scope profits from sales to New Yorkers, it is not at all unfair to render it judicially answerable for its actions in this State. Considering that Pak-Mor’s long business arm extended to New York, it seems only fair to extend correspondingly the reach of New York’s jurisdictional long-arm. In all, we conclude that asserting jurisdiction over Pak-Mor in New York would not offend traditional notions of fair play and substantial justice.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant Pak-Mor’s cross motion to dismiss plaintiffs complaint against it denied.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur; Judge Wesley taking no part.
 

 Order reversed, etc.
 

 [1]
 

 . After the Appellate Division affirmed, plaintiff moved for leave to appeal to this Court. Owing to the existence of cross and counterclaims, we dismissed his initial motion for nonfinality (see,
 
 LaMarca v Pak-Mor Mfg. Co.,
 
 89 NY2d,938). After those claims were resolved, plaintiff again sought leave to appeal to this Court, which we granted.
 

 [2]
 

 . Plaintiff also argues that jurisdiction may be founded upon CPLR 302 (a) (1) (conferring jurisdiction when defendant “transacts any business within the state or contracts anywhere to supply goods or services in the state”) and CPLR 302 (a) (3) (i) (conferring jurisdiction when defendant “regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state”). He did not, however, rely on CPLR 302 (a) (1) before Supreme Court and the argument is therefore unpreserved for our review. We do not address the application of CPLR 302 (a) (3) (i) here inasmuch as we conclude that CPLR 302 (a) (3) (ii) confers jurisdiction.
 

 [3]
 

 . Our discussion of
 
 Asahi
 
 is limited to the “fair play and substantial justice” analysis inasmuch as its treatment of “minimum contacts” did not result in a majority opinion. We note that our result would be the same under either of the “minimum contacts” views expressed.