SEAWEED, INC., Plaintiff,

v.

DMA PRODUCT & DESIGN & MARKETING LLC, Design 2 Launch, Inc., Selling Edge, Inc., Ron Malloy, and Daren D'Andrea, Defendants.

No. 01 Civ. 9005(VM).

United States District Court,
S.D. New York.

Sept. 4, 2002.

Jeffrey Cylkowski, New York City, for plaintiff.

Gene S. Winter, St. Onge, Steward, Johnston Reens, L.L.C., Stamford, CT, for defendants.

## DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiff Seaweed, Inc., ("Seaweed") filed this action asserting claims for patent in-

fringement, trademark infringement, breach of contract and seeking punitive damages and attorneys fees against various named defendants. Defendants Design 2 Launch, Inc. ("D2L"), and Ron Malloy ("Malloy") filed a motion to dismiss Seaweed's claims against them for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2), and sought to dismiss Seaweed's claim for patent infringement pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendant DMA Product & Design & Marketing LLC ("DMA") filed an answer containing counterclaims for breach of contract and unjust enrichment. At the same time, DMA moved to dismiss Seaweed's claim for patent infringement pursuant to Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction). By Order, dated August 23, 2002, the Court ordered the case closed and indicated that it would provide its reasoning in a separate decision.

The record in this matter reflects that DMA and Seaweed agreed for DMA to manufacture a laptop computer support surface device that Seaweed had designed, called the "Lap Lounger." (*See* Product Manufacturing and Marketing Agreement, dated June 20, 2000 (the "Agreement").) Malloy was a signatory to the Agreement. At the time of the Agreement, Seaweed had already filed a patent application with the United States Patent and Trademark Office (the "PTO"). According to Seaweed, DMA did not perform the Agreement. Rather, "as early as February 12, 2001", Malloy and his sister, apparently on behalf of D2L, produced and distributed a Lap Lounger product. On July 9, 2001, Seaweed received a Certificate of Allowability on its patent application for the Lap Lounger. Seaweed filed this action on October 8, 2001. Subsequently, on October 23, 2001, the PTO granted Seaweed's patent application. On November 16, 2002, defendants D2L, Malloy and DMA filed their motions to dismiss.

As set forth in the Affidavit in Opposition of Chad Borke, dated January 12, 2002, and further discussed at the conference before the Court on April 30, 2002, Seaweed did not object to defendants' motions, except to request that any dismissal be made without prejudice. Further, Seaweed stated that it "would agree to a dismissal of all actions, with prejudice, if ... there would be no request for attorney's fees." (Memorandum in Opposition, dated January 22, 2001, at 2.) Further, it "does not wish to proceed against any of the defendants except DMA." (*Id.*, at 1.) Defendants' position is that any dismissals should be made with prejudice so that they may seek attorneys fees and sanctions against Seaweed.

A party's failure to oppose a dispositive motion is different from its seeking voluntary dismissal. *Compare* Fed.R.Civ.P. 12(b) and 56 *with* Fed.R.Civ.P. 41(a). Seaweed's response to the motions to dismiss is in name an opposition, but in substance like a voluntary dismissal. The Court reads Seaweed's ambiguous response as the equivalent of filing no objection.

■ Regardless, even if a plaintiff does not oppose a motion to dismiss, a court should conduct an independent inquiry to determine whether the motion to dismiss has merit. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir.1991) ("The fact is that if a motion to dismiss is granted solely because it has not been opposed ... it is dismissed as a sanction for failure to comply with the local court rule."). Such an inquiry is especially important where the parties do not agree on whether any disposition should be made with or without prejudice. Thus, the Court must assess the claims and motions before it.

■ The Court considers the jurisdictional issues first, because a dismissal for lack of jurisdiction renders all other claims moot. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."); *Calero v. Immigration and Naturalization Service*, 957 F.2d 50 (2d Cir.1992); *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358 (2d Cir.2000). A dismissal for lack of jurisdiction does not operate on the merits and therefore should not issue with prejudice. *See Baker v. Carr*, 369 U.S. 186, 199–200, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). A court may find it appropriate to consider personal jurisdiction before subject matter jurisdiction. *See Ruhrgas*, 526 U.S. at 578, 119 S.Ct. 1563. Thus the Court addresses defendants D2L and Malloy's challenges to personal jurisdiction first.

■ To determine whether it has jurisdiction, a court may look to evidence outside the pleadings. *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir.1986). The plaintiff bears the burden of establishing jurisdiction. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). D2L and Malloy introduced evidence to show that they are not subject to this Court's jurisdiction. Seaweed did not introduce any facts in opposition or controvert any of D2L or Malloy's proffer or arguments.

■ A New York court's exercise of jurisdiction depends on the presence, consent, domicile, business activities of a party, as well as "long arm jurisdiction". *See* New York Civil Practice Law and Regulations ("CPLR") §§ 301, 302, 313, 318. According to the New York law, a New York court has long arm jurisdiction over a defendant that engaged in enumerated activities—including transacting any business or contracts to supply goods or services within the state, or commits a tortious act, or causes injury to persons or property, within New York state—if the suit arises out of that activity. *See* CPLR § 302; *LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000).

■ Any exercise of jurisdiction, of course, must satisfy the United States Constitution's due process requirements. *See Mayes v. Leipziger*, 674 F.2d 178, 183 (2d Cir.1982). A foreign corporation must have some minimum contacts with the forum state before the forum state's courts may exercise jurisdiction over it. *See International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also Alexander & Alexander Services., Inc. v. Lloyd's Syndicate 317*, 925 F.2d 44, 45–47 (2d Cir.1991) (applying *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 563 N.Y.S.2d 739, 565 N.E.2d 488, 490–91 (1990)). If an individual is sued in his individual capacity, but only had contact with New York as an officer of a corporation acting within the scope of his employment, that individual is not subject to personal jurisdiction in New York. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40, 43–44 (1988).

■ D2L is a Delaware corporation, with no offices or sales in New York. D2L has not consented to jurisdiction. The Agreement was not negotiated or entered in New York. Even if it were, D2L is not a party to the Agreement. In the Agreement, Seaweed stated that it has a principal place of business in Rhode Island. Thus, the contract itself did not indicate that Seaweed was a New York corporation. Seaweed now alleges that it was and is a New York corporation, (*See* Compl., ¶ 3.), but did not allege any other facts showing

the required nexus between D2L's business activity and New York. The Court cannot conclude that D2L should have expected its actions would have a direct consequence in New York. *See LaMarca,* 713 N.Y.S.2d 304, 735 N.E.2d at 886–87 (citations omitted). As such, notions of "fair play and substantial justice" do not support calling D2L into New York in this action. *See International Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

Malloy, who is sued in his individual capacity, asserts that he is not domiciled, and was not served, in New York. Nor has he consented to jurisdiction. Thus, the Court cannot assert personal jurisdiction under CPLR § 301. Seaweed asserts that Malloy's activities in manufacturing and selling the product give rise to the patent, trademark or contract causes of action. *See* CPLR § 302. Although Malloy signed the Agreement, that document did not put Malloy on notice that Seaweed was a New York corporation or that any injury to Seaweed would be incurred in New York. Nor does it appear that Malloy transacted any business in New York. Thus, the Court finds that an exercise of jurisdiction over Malloy would offend "fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154; *see also Kreutter,* 527 N.Y.S.2d 195, 522 N.E.2d at 43–44. Accordingly, the Court finds that defendants' objections to personal jurisdiction have sufficient merit to warrant dismissal without reaching the merits of the motion to dismiss grounded in Rule 12(b)(6).

 Seaweed did not move to amend the pleadings because an amendment could not address the flaws identified by defendants. A district court may deny a plaintiff leave to amend where amendment would be futile. *See* Fed.R.Civ.P. 15; *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("In the absence of any apparent or declared reason—such

as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' "). Nevertheless, the flaws identified by defendants do not logically preclude Seaweed from refiling in a more appropriate district. Accordingly, the Court dismissed the claims against D2L and Malloy without prejudice. *See Baker,* 369 U.S. at 199–200, 82 S.Ct. 691.

DMA moved to dismiss Seaweed's cause of action for patent infringement for lack of subject matter jurisdiction because the suit was filed before the PTO granted Seaweed's patent application. Seaweed apparently relied on its receipt of a Certificate of Allowability on the belief that the issuance of a patent is "a mere formality." (Compl., ¶ 18.)

 A predicate to any lawsuit is an "actual case or controversy." *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Patent rights vest upon issuance, and are not retroactive. *See GAF Building Materials Corp. v. Elk Corp.,* 90 F.3d 479, 39 U.S.P.Q.2d 1463, 1466 (Fed.Cir.1996). There is no action for patent infringement prior to the issuance of a patent. *See id.; see also Spectronics Corp. v. H.B. Fuller Company, Inc.,* 940 F.2d 631, 636 (Fed.Cir. 1991); *Goodrich–Gulf Chemicals, Inc. v. Phillips Petroleum Co.,* 247 F.Supp. 158, 160 (N.D.Ohio 1965). Furthermore, to provide retroactive effect or pre-issuance standing to sue would unduly increase the in terrorem power of every patent application, regardless of its particular merit. Thus, the Certificate of Allowability did not give Seaweed standing to sue. The Court dismissed Seaweed's claim for pat-

ent infringement on that ground. Because a patent subsequently issued on the Lap Lounger and Seaweed introduced evidence in support of its allegations that certain defendants have infringed on those patent rights after the patent's issuance, the dismissal was ordered without prejudice.

As already discussed, Seaweed does not object to the dismissal of its entire cause of action, provided that it be made without prejudice. Thus, in the interests of efficiency and judicial economy the Court dismissed the trademark cause of action without prejudice to its refiling as part of any subsequent litigation filed by Seaweed that concerns the same core of operative events. Finally, in the absence of any federal question, and because there was a lack of diversity between the parties at the time the complaint was filed, the Court declines to exercise jurisdiction over the claim and counterclaim for breach of contract and the counterclaim for unjust enrichment. *See* 28 U.S.C. § 1367; *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

### ORDER

For the foregoing reasons, the Court's Order dated August 23, 2002 is amended to incorporate the discussion set forth above; and it is further

ORDERED that this action is dismissed without prejudice to refiling in a more appropriate district at a more appropriate date.

**SO ORDERED.**