Chief Judge DiFIORE.
*835 **239 ***526 This case involves the propriety of New York's exercise of ***527 long-arm jurisdiction over defendant Charles Brown, an Ohio firearm merchant who sold a gun to an Ohio resident in Ohio which was subsequently resold on the black market and used in a shooting in New York. We agree with the Appellate Division that, under the circumstances presented in this case, jurisdiction cannot be exercised over Brown under well-established due process precedent because he lacks minimum contacts with this state.
Defendant Charles Brown, a federal firearm licensee, was authorized to sell handguns only in Ohio and only to Ohio residents, which he primarily accomplished through retail sales at gun shows held in various locations in Ohio. Brown did not maintain a website, had no retail store or business telephone listing, and did no advertising of any kind, except by posting a sign at his booth when participating in a gun show. In a series of transactions in 2000, Brown sold handguns to James Nigel Bostic and his associates. Prior to the transaction involving the gun at issue here, Brown consulted with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to ensure its legality. For each transaction, the necessary forms required by the ATF were properly completed and submitted, the purchaser passed the required Federal Bureau of Investigation (FBI) background check before the firearms were transferred, Brown verified that the purchaser had government-issued identification demonstrating Ohio residency, and notification of the purchases was timely sent to local law enforcement and the ATF as required by the federal Gun Control Act (see 18 USC § 922 ). During the transactions, Bostic indicated he was in the process of becoming a federal firearms licensee and was acquiring inventory for the eventual opening of a gun shop. Instead of opening a shop, Bostic brought the firearms to New York, illegally reselling one of the handguns to a Buffalo gang member. That gang member then used the handgun in a shooting that caused injury to plaintiff.
Plaintiffs commenced this personal injury action against, among others, Beemiller, Inc., an Ohio corporation and federally licensed firearms manufacturer, MKS Supply, Inc., an Ohio corporation and a federally licensed wholesale distributor of firearms, and Brown. Only Brown contested personal jurisdiction. Supreme Court, among other things, initially granted Brown's motion to dismiss the action (2011 N.Y. Slip Op. 34303[U], 2011 WL 13286044 [Sup. Ct., Erie County 2011] ) but the Appellate Division reversed, holding in relevant part that plaintiffs made a ***528 sufficient showing of personal jurisdiction to warrant further disclosure ( 100 A.D.3d 143, 952 N.Y.S.2d 333 [4th Dept. 2012] ). After extensive discovery, Brown moved for summary judgment dismissing the complaint, again asserting a defense of lack of personal jurisdiction. Supreme Court denied the motion. The Appellate Division reversed, granted the motion for summary judgment, and dismissed the complaint as against Brown ( 159 A.D.3d 148, 72 N.Y.S.3d 276 [4th Dept. 2018] ). Although the Appellate Division credited plaintiffs' argument that jurisdiction could be exercised under CPLR 302, New York's long-arm statute, it nonetheless reversed based on its conclusion that plaintiffs *836 **240 failed to establish the requisite minimum contacts under the due process clause. Plaintiffs appealed to this Court as of right on that substantial constitutional question and we now affirm.
When the defense is timely asserted, a New York court may not exercise personal jurisdiction over a non-domiciliary unless two requirements are satisfied: the action is permissible under the long-arm statute ( CPLR 302 ) and the exercise of jurisdiction comports with due process (see LaMarca v. Pak-Mor Mfg. Co. , 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 [2000] ). If either the statutory or constitutional prerequisite is lacking, the action may not proceed. Due process requires that a nondomiciliary have "certain minimum contacts" with the forum and "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" ( International Shoe Co. v. Washington , 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 [1945] [internal quotation marks and citations omitted] ). Thus, this constitutional mandate likewise encompasses two requirements and jurisdiction may not be exercised unless both are present.
With respect to due process, "[a] non-domiciliary tortfeasor has minimum contacts with the forum State ... if it purposefully avails itself of the privilege of conducting activities within the forum State" ( LaMarca, 95 N.Y.2d at 216, 713 N.Y.S.2d 304, 735 N.E.2d 883 [internal quotations marks and citations omitted] )," thus invoking the benefits and protections of [the forum state's] laws" ( Hanson v. Denckla , 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 [1958] ). This test envisions something more than the "fortuitous circumstance" that a product sold in another state later makes its way into the forum jurisdiction through no marketing or other effort of defendant ( World-Wide Volkswagen Corp. v. Woodson , 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 [1980] ; see J. McIntyre Machinery, Ltd. v. Nicastro , 564 U.S. 873, 888-889, 131 S.Ct. 2780, 180 L.Ed.2d 765 [2011] [Breyer, J., concurring] ). Put another way, "the mere likelihood that a product will find its way into the forum" cannot ***529 establish the requisite connection between defendant and the forum "such that [defendant] should reasonably anticipate being haled into court there" ( World-Wide Volkswagen , 444 U.S. at 297, 100 S.Ct. 580 ).
The constitutional inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation' " ( Keeton v. Hustler Magazine, Inc. , 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 [1984], quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 [1977] ). Significantly, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction" ( Walden v. Fiore , 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 [2014] ). Thus, the United States Supreme Court has "upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another" ( Walden , 571 U.S. at 285, 134 S.Ct. 1115 ; see e.g. Burger King Corp. v. Rudzewicz , 471 U.S. 462, 480, 105 S.Ct. 2174, 85 L.Ed.2d 528 [1985] ), while clarifying that the relationship between defendant and the forum state must arise out of defendant's own contacts with the forum and not "contacts between the plaintiff (or third parties) and the forum State" ( Walden , 571 U.S. at 284, 134 S.Ct. 1115, citing Helicopteros Nacionales de Colombia, S.A. v. Hall , 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 [1984] ; Hanson , 357 U.S. at 253-254, 78 S.Ct. 1228 ; World-Wide Volkswagen , 444 U.S. at 298, 100 S.Ct. 580 ).
**241 *837 In Walden , the United States Supreme Court held that jurisdiction was not properly exercised where a defendant committed allegedly tortious conduct in Georgia against Nevada residents, despite knowing that the conduct would continue to affect them after their return to Nevada. The Supreme Court explained that, "when viewed through the proper lens-whether the defendant's actions connect him to the forum-[defendant] formed no jurisdictionally relevant contacts with Nevada," because the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada" ( Walden , 571 U.S. at 289, 134 S.Ct. 1115 [emphasis omitted] ). Ultimately, "[d]ue process requires that a defendant be haled into court in a forum State based on [defendant's] own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [defendant] makes by interacting with other persons affiliated with the State" ( Walden , 571 U.S. at 286, 134 S.Ct. 1115, quoting Burger King , 471 U.S. at 475, 105 S.Ct. 2174 ; see Siegel, N.Y. Prac § 88 [6th ed] [observing that the Supreme Court has "tighten[ed] ... the reins on the application of longarm jurisdiction"] ).
Here, viewing the facts in the light most favorable to plaintiffs, we agree with the Appellate Division that the ***530 requisite showing of minimum contacts with New York is lacking. In asserting jurisdiction, plaintiffs rely on the fact that firearms sold by Brown in Ohio eventually reached New York and claim that Brown should have had a reasonable expectation that this would happen based on conversations in which Bostic said he planned to open a shop in Ohio and "wouldn't mind having a shop in Buffalo." We agree with the Appellate Division that this evidence falls short of demonstrating purposeful availment. The facts of this case stand in contrast to those in LaMarca , wherein jurisdiction was properly exercised over a defendant that, in addition to advertising nationwide, initiated a business relationship with a New York-based distributor in order to sell products in New York (95 N.Y.2d at 218, 713 N.Y.S.2d 304, 735 N.E.2d 883 ). We distinguished that scenario from one where "defendant's connection with the forum State resulted from decisions made by others" ( id. at 217, 713 N.Y.S.2d 304, 735 N.E.2d 883 ). The latter is what occurred here.
Brown was not a member of the criminal gun trafficking conspiracy[1] and had no distribution agreement with Bostic and his associates, who purchased guns in separate transactions. Brown offered uncontradicted evidence that Bostic, who resided in a neighboring Ohio town, represented to Brown that he had applied for an FFL - a license that would, once acquired, permit him (like Brown) to sell handguns only in Ohio to Ohio residents. Despite **242 *838 Bostic's stated aspiration to open a gun shop in Buffalo, the record is devoid of evidence supporting plaintiffs' theory that, merely by selling handguns to Bostic, Brown intended to serve the New York market. Even if Bostic indicated that there was a chance that he may - at some undefined point in the future - transport the firearms to New York, Brown cannot be said to have "forged [constitutionally ***531 sufficient] ties with New York" as there is no evidence that he "took purposeful action, motivated by the entirely understandable wish to sell [his] products here" such that he availed himself "of the privilege of conducting activities within" New York ( LaMarca , 95 N.Y.2d at 216-217, 713 N.Y.S.2d 304, 735 N.E.2d 883 [internal quotation marks and citations omitted]; see Walden , 571 U.S. at 286, 134 S.Ct. 1115 ). In the absence of minimum contacts, New York courts may not exercise personal jurisdiction over Brown.[2] Plaintiffs' alternative alter ego theory of jurisdiction is also unavailing.
Plaintiffs appropriately condemn the scourge of illegal gun trafficking affecting our state and others, which takes an enormous toll on injured parties and their communities. However, notwithstanding the sympathetic facts in this case, we must neutrally apply the well-established precedent of this Court and the United States Supreme Court, which precludes this action from proceeding against Brown in New York, while leaving claims against the manufacturer and distributor pending.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

To the extent that plaintiffs rely on the theory that Brown knew Bostic was not a legitimate gun dealer and instead intended to sell guns illegally, the only basis in the record to conclude that Brown had any knowledge of Bostic's ties to New York were Bostic's statements that he was from Buffalo and "was planning on possibly" opening a gun shop there. Even assuming Brown possessed such a belief, knowledge that goods might end up in New York is not the equivalent of purposeful availment. Moreover, the record shows that Brown consulted the ATF prior to making the sales in question - conduct hardly consistent with the theory that Brown and Bostic had entered into an illicit distribution arrangement to sell guns on the New York black market. Although on a motion for summary judgment we must view the facts in the light most favorable to the non-moving party, this does not permit us to alter or distort the facts or draw inferences not reasonably supported by the record.

Because we agree with the Appellate Division's constitutional analysis, we do not address Brown's contention, as an alternative ground for affirmance, that the Appellate Division erred in crediting plaintiffs' interpretation of CPLR 302. Even assuming that jurisdiction could be exercised under the statute, the constitutional deficiency precludes the action from proceeding against Brown in New York.