English v Avon Prods., Inc. (2022 NY Slip Op 03571)

English v Avon Prods., Inc.

2022 NY Slip Op 03571

Decided on June 02, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 02, 2022

Before: Gische, J.P., Scarpulla, Shulman, Pitt, JJ. 

Index No. 190346/18 Appeal No. 15655 Case No. 2021-01689 

[*1]Linda English et al., Plaintiffs-Respondents,
v
Avon Products, Inc., et al., Defendants, Procter & Gamble Manufacturing Company as Successor-in-Interest to Shulton, Inc., Defendant-Appellant.

Goldberg Segalla, LLP, New York (David E. Rutkowski of counsel), for appellant.
Simmons Hanly Conroy LLC, New York (James M. Kramer of counsel), for respondents.

Order, Supreme Court, New York County (Adam Silvera, J.), entered October 20, 2020, which denied defendant Shulton Inc.'s motion to dismiss the complaint based on the lack of personal jurisdiction over it, unanimously affirmed, without costs.
Plaintiffs allege that Linda English, the injured plaintiff, developed peritoneal mesothelioma from her use of an asbestos-containing talcum powder product manufactured and marketed by Shulton. The primary issue on this appeal is whether the court has specific (long-arm) jurisdiction over Shulton, which maintains its principal place of business in New Jersey.
As a preliminary matter, we find that Shulton's appeal is timely and has not been waived. The appeal was filed before the applicable deadline, taking into account the tolling of deadlines in Governor Cuomo's Executive Orders during the coronavirus pandemic. Furthermore, Shulton did not waive its challenge to the court's jurisdiction over it, as the defense was raised in Shulton's first responsive pleading (CPLR 3211[e]). Shulton also did not waive the defense when it moved for dismissal of the complaint based on forum non conveniens without also raising the issue of personal jurisdiction (Sinochem Intern. Co. Ltd. v Malaysia Intern. Shipping Corp., 549 US 422, 431 [2007]; see Estate of Kainer v UBS AG, 37 NY3d 460, 466 [2021]; Trimarco v Edwards, 183 AD3d 402, 403 [1st Dept 2020]).
As to the merits, where, as here, the defense is timely asserted, a court may not exercise personal jurisdiction over a nondomiciliary unless two requirements are satisfied: the action is permissible under New York's long-arm statute, and the exercise of jurisdiction comports with due process (Williams v Beemiller, Inc., 33 NY3d 523, 528 [2019]; LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210, 214 [2000]).
We find that the Supreme Court has personal jurisdiction over Shulton pursuant to CPLR 302(a)(1), which applies by its terms, and that the exercise of jurisdiction over Shulton is also compatible with due process (see Ford Motor Co. v Montana Eighth Jud. Dist. Ct., 592 US ,, 141 S Ct 1017, 1025 [2021]; Bristol-Myers Squibb Co. v Superior Court of Cal., San Francisco County, 582 US ,, 137 S Ct 1773, 1780 [2017]; LaMarca, 95 NY2d at 214).
English, a Texas resident, was employed as a flight attendant for 33 years, from 1966 to 1999. During a substantial part of that time, she used Desert Flower on a daily basis after showering. From 1966 to 1984, English was regularly assigned to flights into New York and flew into this state two to four times a month. She usually remained in New York on two- or three-day layovers. When English travelled, she packed Desert Flower in her luggage, so she would have it available for use when she showered. There is no claim that the Desert Flower English used in New York was purchased in New York.
Shulton is incorporated in New Jersey, where it had its principal place of business during the time that English claims to have used Desert [*2]Flower. Shulton never manufactured Desert Flower in New York, and in the mid-1970s the manufacture of its talc products shifted from Tennessee to New Jersey. Desert Flower was marketed nationally, including in New York. During the relevant period of time, Shulton maintained a New York office from which it conducted its marketing activities for its Cosmetics and Toiletries Division. The New York office was also headquarters for its International Division.
CPLR 302(a), the long-arm statute, sets forth certain acts by nondomiciliaries that will subject them to the personal or specific jurisdiction of a New York court, so long as the causes of action asserted against them "aris[e] from" any one of the four enumerated acts in the statute. In relevant part, CPLR 302(a) provides as follows:
"§ 302. Personal jurisdiction by acts of non-domiciliaries
"(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
"1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . .
"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."
CPLR 302(a)(1) requires a two-pronged jurisdictional inquiry. The first inquiry is whether defendant conducted sufficient activities to have transacted business within the state; the second inquiry is whether plaintiff's claims arise from the transactions (Rushaid v Pictet & Cie, 28 NY3d 316, 323 [2016]; Wilson v Dantas, 128 AD3d 176, 181 [1st Dept 2015], affd 29 NY3d 1051 [2017]). The primary focus of a specific jurisdiction inquiry is the defendant's relationship to the forum state (Bristol-Myers Squibb Co., 137 S Ct at 1779). If the lawsuit arises out of or relates to the defendant's contacts with the forum state  here New York and there is an affiliation between New York and the underlying controversy, then a New York court may exercise specific jurisdiction over the defendant (Bristol-Myers Squibb Co., 137 S Ct at 1780). Although there must be a "substantial relationship between the transaction and the claim asserted" (Rushaid, 28 NY3d at 329), a strict causal relationship is not necessary (Ford Motor Co., 592 US at , 141 S Ct at 1026). Rather, the causal link or relatedness between the defendant's activities and the plaintiff's claims requires only that there be a "relationship among the defendant, the forum and the litigation" (Keeton v Hustler Magazine, Inc., 465 US 770, 775 [1984]). Otherwise stated, plaintiff's claims must have an "articulable nexus" with the defendant's transactions within this state (D & R Glob. Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d 292, 298-299 [2017]).
Once both those prongs are satisfied, there is a [*3]further inquiry to determine whether the exercise of personal jurisdiction comports with traditional notions of fair play, substantial justice, and due process (see e.g. International Shoe Co. v Washington, 326 US 310, 316 [1945]). The "due process" element is satisfied where the nondomiciliary has minimum contacts with New York State and based upon those contacts, defendant could or should have reasonably anticipated being "haled into court" here (LaMarca, 95 NY2d at 216, citing World-Wide Volkswagen Corp. v Woodson, 444 US 286, 297 [1980]; see also Kulko v Superior Ct. of Cal., 436 US 84, 97—98 [1978]). By purposefully availing itself of the privilege of conducting business in New York State, a defendant should foresee the possibility of having to defend a lawsuit here (see Ford Motor Co., 141 S Ct at 1025; Bristol-Myers Squibb Co., 137 S Ct at 1780; LaMarca, 95 NY2d at 216).
Plaintiffs have established that Shulton transacted business in New York by engaging in purposeful activity here (see Fischbarg vDoucet, 9 NY3d 375, 380 [2007]). Preliminarily, we agree with Shulton that jurisdiction over it may not be based upon its business dealings to acquire raw talc from WCD, a New York company (see Bristol-Myers Squibb Co., 137 S Ct at 1780 [nondomiciliary pharmaceutical company's contract with in-state company to sell its drug nationally did not provide sufficient basis for personal jurisdiction]). However, Shulton's maintenance of its own New York office satisfies the first prong under CPLR 302(a)(1). Shulton's purposeful and substantial marketing efforts were operated from that office and Shulton maintained and operated that New York office until 1971, coinciding with at least part of the time English used its products. Not only was the marketing for the Shulton's Cosmetic and Talcum Division based at that location, but in its 1958 annual report to shareholders, Shulton lauds the "new, enlarged [and] modernized quarters" occupied by its offices, predicting that "[t]his will provide growing space for the future as well as fill our present needs." In 1969, Shulton advised its shareholders that it would be using "top New York" advertising agencies to market its cosmetic and body products, rather than relying on its in-house talent. Collectively, these activities demonstrate that Shulton engaged in a persistent course of conduct of transacting business in New York in the years that English used its Desert Flower product.
Plaintiffs have also shown there is a relationship among defendant, the forum, and the litigation (Keeton, 465 US at 775; D & R Glob. Selections, S.L., 29 NY3d at 298). English claims she was injured by her use of Desert Flower talc, a Shulton product. Desert Flower was marketed and sold nationally, and English used Desert Flower when she travelled to and while she stayed in New York. Shulton's activities and contacts with New York and the allegedly hazardous talcum powder used by English are sufficient to support an assertion of specific [*4]jurisdiction over Shulton.
In view of our conclusion that jurisdiction exists under CPLR 302(a)(1), we need not reach the alternative argument about whether we also have jurisdiction under CPLR 302(a)(3).
Finally, we reject Shulton's argument that Supreme Court's denial of its motion is at odds with the dismissal of the other defendants, which did not have their principal places of business in New York. Under long-arm jurisdiction the result does not solely turn on where a corporation maintains its principal place of business, but rather on each corporation's individual contacts with New York State.
We have considered Shulton's remaining arguments and find them unavailing. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 2, 2022