Aybar v US Tires & Wheels of Queens, LLC (2022 NY Slip Op 06099)

Aybar v US Tires & Wheels of Queens, LLC

2022 NY Slip Op 06099

Decided on November 2, 2022

Appellate Division, Second Department

Genovesi, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 2, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
LINDA CHRISTOPHER
LARA J. GENOVESI
DEBORAH A. DOWLING, JJ.

2019-12110
 (Index No. 703632/17)

[*1]Jose Aybar, etc., et al., plaintiffs, 
v
US Tires and Wheels of Queens, LLC, defendant third-party plaintiff-respondent; Goodyear Tire & Rubber Company, et al., third-party defendants-appellants, et al., third-party defendant. APPEAL by the third-party defendants Goodyear Tire & Rubber Company and Ford Motor Company, in an action, inter alia, to recover damages for personal injuries, from an order of the Supreme Court (Denis J. Butler, J.), dated September 25, 2019, and entered in Queens County. The order, insofar as appealed from, denied those third-party defendants' separate motions pursuant to CPLR 3211(a) to dismiss the third-party complaint insofar as asserted each of them.

DLA Piper, LLP (US), New York, NY (Jayne Anderson Risk and Neal F. Kronley of counsel) for third-party defendant-appellant Goodyear Tire & Rubber Company, and Aaronson, Rappaport Feinstein & Deutsch, LLP, New York, NY (Elliot J. Zucker, Peter J. Fazio, and Hogan Lovells US, LLP [Sean Marotta and Michael West, pro hac vice], of counsel), for third-party defendant-appellant Ford Motor Company (one brief filed).

Farber Brocks & Zane, LLP, Garden City, NY (Lester Chanin of counsel), for defendant third-party plaintiff-respondent.
Omrani & Taub, P.C. (Parker Waichman, LLP, Port Washington, NY [Jay L.T. Breakstone], of counsel), for plaintiffs Orlando Gonzales, Jesenia Aybar, as administrator of the estate of Nelia Oliveras, as legal guardian on behalf of K.C., a minor, and as administrator of the estate of T.C., and Anna Aybar.

GENOVESI, J.

OPINION & ORDER
This appeal presents the question of whether specific personal jurisdiction exists over the third-party defendants, two out-of-state corporations, pursuant to New York State's long-arm statute, CPLR 302(a)(1). Specifically, this case presents an opportunity to discuss the second prong of the long-arm statute, whether there is an articulable nexus or substantial relationship between the cause of action sued upon, or an element thereof, and those third-party defendants' business transactions in New York. We conclude that here, there is specific jurisdiction over the out-of-state corporations.
I. Factual and Procedural History
A. Facts
In 2002, the third-party defendant Ford Motor Company (hereinafter Ford) manufactured a Ford Explorer in Missouri and sold the vehicle to an independently-owned Ford dealership in Ohio. In 2009, the vehicle entered New York when it was sold and registered to a New York resident by the name of Jose Velez. In 2011, Jose Aybar, Jr., a New York resident, purchased the vehicle from Velez in New York.
On or about June 17, 2012, Aybar brought the vehicle to the defendant, US Tires and Wheels of Queens, LLC (hereinafter US Tires), in New York, for service to its tires, at Aybar's request. US Tires inspected the tires and then installed them.
Two weeks later, on July 1, 2012, Aybar was driving on an interstate highway in [*2]Virginia as part of a return trip from Disney World with members of his family as passengers when one of the tires allegedly failed. Aybar lost control of the vehicle and it overturned several times. There were six passengers in the vehicle. Three, including a child, died and three were seriously injured. The tire was manufactured by the third-party defendant Goodyear Tire & Rubber Company (hereinafter Goodyear).
The accident gave rise to three lawsuits, including this one, all involving direct or third-party claims against Ford and Goodyear. Goodyear is incorporated and has its principal place of business in Ohio. Ford is incorporated in Delaware and has its principal place of business in Michigan.
B. Procedural History
1. Aybar v Aybar (Aybar I)
In Aybar v Aybar (169 AD3d 137, affd 37 NY3d 274), the injured passengers and the representatives of the estates of the passengers who died asserted negligence claims against the owner and driver, Aybar, as well as products liability and negligence claims against Ford and Goodyear. In that action, Ford and Goodyear separately moved pursuant to CPLR 3211(a)(8) to dismiss the complaint insofar as asserted against each of them on the ground of lack of personal jurisdiction (see id. at 140). Goodyear demonstrated that the tire was designed in Ohio and manufactured in Tennessee. Ford demonstrated that the vehicle was manufactured in Missouri and sold in Ohio. Ford further demonstrated that it did not have manufacturing plants in New York and did not directly engage in the servicing of Ford vehicles in New York (see id.). In opposing the motions to dismiss, the plaintiffs argued that Ford and Goodyear were subject to general jurisdiction in New York (see id.).
In two orders dated May 31, 2016, the Supreme Court denied the motions to dismiss, finding that while there was no specific jurisdiction under New York's long-arm statute, CPLR 302, there was general jurisdiction under CPLR 301 (see Aybar v Aybar, 2016 NY Slip Op 31138[U] [Sup Ct, Queens County 2016, Raffaele, J.], revd 169 AD3d 137, affd 37 NY3d 274; Aybar v Aybar, 2016 NY Slip Op 31139[U] [Sup Ct, Queens County 2016, Raffaele, J.], revd 169 AD3d 137, affd 37 NY3d 274).
Ford and Goodyear appealed. On appeal, Ford and Goodyear argued that the Supreme Court erred in finding general jurisdiction. In their briefs on appeal, the plaintiffs did not argue that New York also had specific jurisdiction or long-arm jurisdiction. However, US Tires, which was not a party to the action, submitted a brief arguing that there was both general and specific jurisdiction or long-arm jurisdiction over Ford and Goodyear.
In an opinion by Justice Brathwaite Nelson, this Court first noted that the issue of whether New York could exercise specific or long-arm jurisdiction had not been raised by the plaintiffs in opposition to the motions to dismiss and that therefore, it would not consider it (see Aybar v Aybar, 169 AD3d at 143). This Court then reversed the orders appealed from, holding that Goodyear's and Ford's contacts with New York did not support a finding of general jurisdiction under due process principles because, despite their extensive commercial activities in New York, they were not "at home" in New York (id. at 146). In addition, this Court held that neither Goodyear nor Ford consented to New York's general jurisdiction by registering to do business in New York and appointing an agent for service of process (see id. at 152).
The plaintiffs appealed. On appeal, the Court of Appeals affirmed, but only on the issue before it, which was whether Ford and Goodyear consented to New York's general jurisdiction (see Aybar v Aybar, 37 NY3d 274 [2021]). The Court of Appeals declined to address the issue of specific or long-arm jurisdiction as that issue was not properly before it (see id. at 282). In addition, the Court of Appeals noted that "the plaintiffs have abandoned any argument that Ford and Goodyear are essentially at home in New York such that general jurisdiction exists" (id.). Accordingly, the Court of Appeals concluded that the only issue before it was whether Ford and Goodyear consented to general jurisdiction in New York by registering to do business and designating a local agent for service of process in compliance with the Business Corporation Law (see id.). The Court of Appeals held that Ford and Goodyear did not so consent (see id.).
2. Aybar v Goodyear (Aybar II)
The second action, Aybar v Goodyear Tire & Rubber Co. (175 AD3d 1373), was commenced by Aybar, the owner and driver, against Goodyear, among others, alleging strict products liability, negligence, and breach of warranty claims. In that action, Goodyear also moved pursuant to CPLR 3211(a)(8) to dismiss the complaint insofar as asserted against it for lack of personal jurisdiction. In an order dated May 31, 2016, the Supreme Court denied the motion (see Aybar v Goodyear Tire & Rubber Co., 2016 NY Slip Op 33056[U] [Sup Ct, Queens County 2016, Raffaele, J.], revd 175 AD3d 1373). The Supreme Court found that there was no specific or long-arm jurisdiction over Goodyear under CPLR 302 (a)(1) because the strict products liability, [*3]negligence, and breach of warranty claims did not arise out of Goodyear's activities in New York (see Aybar v Goodyear Tire & Rubber Co., 2016 NY Slip Op 33056[U]).
However, the Supreme Court found that Goodyear was subject to general jurisdiction under CPLR 301 because (1) its activities in New York were so continuous and systematic that it was essentially "at home" in New York, and (2) Goodyear consented to general jurisdiction by registering to do business in New York (see Aybar v Goodyear Tire & Rubber Co., 2016 NY Slip Op 33056[U], **5).
Goodyear appealed and on appeal, neither Goodyear nor the plaintiffs raised the issue of specific or long-arm jurisdiction. Though not a party to that action, it was only US Tires who submitted a brief, arguing that Goodyear was subject to specific or long-arm jurisdiction. US Tires maintained that because Goodyear marketed its tires in New York and there was a connection between Goodyear's marketing its tires in New York and the accident, and since Goodyear sold the exact same model tire in New York with the same design flaws and manufacturing defects as the tire involved in the accident, Goodyear was subject to long-arm jurisdiction in New York. However, this Court, again, did not consider the issue of specific jurisdiction or long-arm jurisdiction, as it was not raised before the Supreme Court and therefore not properly before this Court. As to general jurisdiction, citing our prior decision in Aybar I, this Court reversed the order appealed from (see Aybar v Goodyear Tire & Rubber Co., 175 AD3d at 1373-1374). This Court again found that there was no general jurisdiction over Goodyear and that Goodyear did not consent to general jurisdiction by registering to do business in New York (see id. at 1374).
3. Aybar v US Tires (Aybar III)
The plaintiffs, including Aybar, commenced the instant action against the defendant US Tires, which allegedly negligently inspected and installed the Goodyear brand tires onto Aybar's vehicle in New York. US Tires commenced a third-party action against Ford and Goodyear and one other entity seeking indemnification and contribution. In their respective third-party answers, Ford and Goodyear both asserted the affirmative defense of lack of personal jurisdiction.
C. The Underlying Motion Practice
Here, Ford and Goodyear separately moved pursuant to CPLR 3211(a) to dismiss the third-party complaint insofar as asserted against each of them, on the ground, among others, that the New York court lacked personal jurisdiction over each of them. Ford and Goodyear argued that there was no general jurisdiction. Additionally, they argued that there was no specific or long-arm jurisdiction under CPLR 302. In opposing the separate motions of Ford and Goodyear, US Tires argued, among other things, that New York could exercise specific jurisdiction pursuant to CPLR 302. Some of the plaintiffs also opposed the motions to dismiss.
D. The Order Appealed From
In an order dated September 25, 2019, the Supreme Court, inter alia, denied Ford and Goodyear's motions (see Aybar v US Tires & Wheels of Queens, LLC, 65 Misc 3d 932 [Sup Ct, Queens County 2019, Butler, J.]). As to general jurisdiction, the court stated that it was constrained by this Court's decisions in Aybar I and Aybar II. However, as to specific jurisdiction, the court held that US Tires demonstrated that Ford and Goodyear fell within the reach of New York's long-arm jurisdiction statute, CPLR 302(a)(1), for two reasons. First, it stated, "[i]t is undisputed that both Ford and Goodyear have considerable financial and business contacts and dealings in the State of New York and have had these contacts for a lengthy period of time" (Aybar v US Tires & Wheels of Queens, LLC, 65 Misc 3d at 935). Second, it stated:
"although the products at issue herein were manufactured out of state by third-party defendants, the nature of their businesses within New York State include, but are not limited to, marketing, promoting, advertising, sales, and servicing (either through corporate owned entities or independent contractors or dealers under contract) of their products. These business activities are directly targeted at the New York market, consisting of millions of resident drivers. Ford and Goodyear manufacture these vehicles and tires outside the state, but sell these vehicles and tires throughout New York State, nationally, and internationally. More specifically, both third-party defendants locate themselves throughout New York State, around the country, and the world for these purposes. Here, in the State of New York, as aforesaid, they each have numerous wholly owned or contractual relationships with independent dealers who sell their products, both new and used, to residents of New York. Both spend considerable capital on sophisticated marketing, advertising and promotional programs to sell their products and enhance their brand names in New York State" (id. at 935-936).The court further held that due process considerations were satisfied, even though the accident occurred in Virginia, because both Ford and Goodyear "assure the flow of their products to New York through their myriad assortment of [*4]purposeful activities in which they partake" and because "the nature of the business activities of the parties satisfies the requirement for an arguable nexus and substantial relationship between that business and the causes of action revolving around the alleged defective products purchased and installed on the vehicle in New York" (id. at 937).
Ford and Goodyear appeal. The appeal, as limited by their joint brief, raises the question of whether a New York court can exercise specific personal jurisdiction over Ford and Goodyear, two out-of-state corporations, for claims arising out of a Virginia car accident. We conclude that it can, and affirm the order insofar as appealed from.
II. Legal Analysis
"International Shoe crystallized the two categories of personal jurisdiction that we now recognize, general or all-purpose jurisdiction and specific or case-linked jurisdiction. The former permits a court to exercise jurisdiction over a defendant in connection with a suit arising from events occurring anywhere in the world, whereas the latter permits a court to exercise jurisdiction only where the suit arises out of or relates to the defendant's contacts with the forum state" (Aybar v Aybar, 37 NY3d at 288-289 [alterations, citation, and internal quotation marks omitted]; see Bristol-Myers Squibb Co. v Superior Court of Cal., San Francisco Cty., __ US __, __, 137 S Ct 1773, 1780; Goodyear Dunlap Tires Operations, S.A. v Brown, 564 US 915, 919; International Shoe Co. v Washington, 326 US 310).
"Specific jurisdiction has rapidly expanded" (Aybar v Aybar, 37 NY3d at 289). "'Since International Shoe, specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role'" (id., quoting Daimler AG v Bauman, 571 US 117, 182 [internal quotation marks omitted]; see Goodyear Dunlap Tires Operations, S.A. v Brown, 564 US at 925). The United States Supreme Court has moved away from the rigid interpretation that a tribunal's jurisdiction is limited by "the geographic bounds of the forum," which was seen in Pennoyer v Neff (Daimler AG v Bauman, 571 US at 125, citing Pennoyer v Neff, 95 US 714). "Specific jurisdiction has been cut loose from Pennoyer's sway, but [the Supreme Court has] declined to stretch general jurisdiction beyond limits traditionally recognized" (Daimler AG v Bauman, 571 US at 132). "The law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy" (Ford Motor Co. v Montana Eighth Jud. Dist. Ct., __ US __, __, 141 S Ct 1017, 1025, citing Bristol-Myers Squibb Co. v Superior Court of Cal., San Francisco Cty., __ US at __, 137 S Ct at 1780). Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims" (Ford Motor Co. v Montana Eighth Jud. Dist. Ct., __ US at __, 141 S Ct at 1024).
A. Statutory Framework
In New York, specific jurisdiction is obtained through New York's long-arm statute, CPLR 302 (see Fanelli v Latman, 202 AD3d 758). CPLR 302(a)(1) provides that "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" "The CPLR 302(a)(1) jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions" (Rushaid v Pictet & Cie, 28 NY3d 316, 323).
In this case, Ford and Goodyear concede that the first prong of CPLR 302(a)(1) is satisfied. Therefore, the discussion that follows is limited to the second prong, whether US Tires' third-party claims arise from Ford's and Goodyear's business transactions in New York.
To satisfy the second prong, the statute requires an "articulable nexus" or "substantial relationship" between the cause of action sued upon, or an element thereof, and the defendants' business transactions in New York (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d 292, 298 [internal quotation marks omitted]; see Licci v Lebanese Can. Bank, SAL, 20 NY3d 327, 329; McGowan v Smith, 52 NY2d 268; Lowy v Chalkable, LLC, 186 AD3d 590; Qudsi v Larios, 173 AD3d 920). Importantly, "'[t]his inquiry is relatively permissive, and does not require causation'" (Skutnik v Messina, 178 AD3d 744, 745, quoting Rushaid v Pictet & Cie, 28 NY3d at 329; see Lowy v Chalkable, LLC, 186 AD3d at 592). There must at least be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim" (Skutnik v Messina, 178 AD3d at 745 [internal quotation marks omitted]). Therefore, jurisdiction under CPLR 302(a)(1) "is proper even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (Fischbarg v Doucet, 9 NY3d 375, 380 [internal quotation marks omitted]). "Where this necessary relatedness is lacking, we have characterized the claim as 'too attenuated' from the transaction, or 'merely [*5]coincidental' with it" (Licci v Lebanese Can. Bank, SAL, 20 NY3d at 340, citing Johnson v Ward, 4 NY3d 516, 520).
B. Application of the Law
"The ultimate burden of proving a basis for personal jurisdiction rests with the party asserting jurisdiction" (Fannelli vLatman, 202 AD3d at 759). However, in opposing a motion pursuant to CPLR 3211(a)(8) to dismiss based on lack of personal jurisdiction, a party need only make a prima facie showing that personal jurisdiction exists (see Federal Natl. Mtge. Assn. v Grossman, 205 AD3d 770, 771; Lowy v Chalkable, LLC, 186 AD3d at 590).
1. CPLR 302(a)(1)
Here, we conclude that US Tires met its burden in opposition to Ford's and Goodyear's motions by making a prima facie showing of jurisdiction pursuant to CPLR 302(a)(1) (see Skutnik v Messina, 178 AD3d 744; Robins v Procure Treatment Ctrs., Inc., 157 AD3d 606; cf. Santiago v Highway Frgt. Carriers, Inc., 153 AD3d 750). As stated above, Ford and Goodyear concede that they conducted sufficient activities to have transacted business in New York, thus satisfying the first prong of CPLR 302(a)(1). As to the second prong of CPLR 302(a)(1), US Tires demonstrated that Goodyear's and Ford's activities in New York have a sufficient connection with the claims herein.
Undoubtably, the facts in the instant case and related actions demonstrate numerous ties to other states. Ford, a Delaware corporation, with its principal place of business in Michigan, manufactured the vehicle in Missouri and sold it in Ohio. Goodyear, an Ohio corporation, designed the tire in Ohio and manufactured it in Tennessee. The accident occurred in Virginia. However, what distinguishes the instant action (Aybar III) from the related actions (Aybar I and Aybar II), and what firmly grounds this action in New York, is the defendant, US Tires.
This action, unlike Aybar I and Aybar II, is not a direct action against Ford or Goodyear. In this action, Aybar, a resident of New York, alleges a cause of action sounding in negligence against US Tires. Based on the record before us, it appears that US Tires, an automotive mechanic shop, does not manufacture or sell its own tires. Its business centers around repairs to automobiles, as well as the sale and installation of tires from companies such as Ford and Goodyear. US Tires was tasked with inspecting and installing the Goodyear tires in question on Aybar's 2002 Ford Explorer and the plaintiffs allege that it did so negligently. The alleged negligence occurred at US Tires' place of business, in New York. Therefore, although the plaintiffs' damages, here the injuries, occurred in Virginia, in this action, the alleged breach occurred in New York.
Notably, the motions before the Supreme Court were to dismiss the third-party complaint insofar as asserted against Ford and Goodyear for lack of personal jurisdiction. US Tires' third-party complaint alleges that if it is found negligent, its liability is secondary to the negligence of Ford and Goodyear. The third-party causes of action against Ford and Goodyear for indemnification and contribution, which are the subject of this appeal, could not exist but for US Tires' alleged negligence, which occurred in New York.
The contention of Ford and Goodyear that the claims here do not "arise out of" their New York activities is not persuasive. The inquiry before us is considered "permissive," and therefore, the claim need not "arise out of" nor be causally related to their transactions in New York. Rather, the claim need only be sufficiently related to their transactions in New York, or have some "articulable nexus" (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 298 [internal quotation marks omitted]). Also unpersuasive is their argument that, because they did not design, manufacture, or sell the vehicle or the tire in New York, their transactions in New York are entirely "unmoored" from the claims herein. Ford and Goodyear purposely availed themselves of the New York market to sell motor vehicles and tires. By doing so, and on such a grand scale as befitting titans in their respective industries, such as Ford and Goodyear, they would undoubtably benefit from the sale of replacement parts and services from third-party companies. Here, the inspection and installation of those parts in New York was allegedly done so negligently, and the third-party claims for indemnification and contribution are therefore, tethered.
This case may be distinguished from Fernandez v DaimlerChrysler, AG. (143 AD3d 765), on which Ford and Goodyear rely. In Fernandez, the plaintiff was driving in Pennsylvania when she allegedly lost control of her Jeep. As a result of the accident, the plaintiff commenced an action sounding in strict products liability and negligence against, among others, DaimlerChrysler, A.G., alleging defective ball joints and front lower control arms. DaimlerChrysler, A.G., moved to dismiss the complaint insofar as asserted against it pursuant to CPLR 3211(a)(8) for lack of personal jurisdiction. In Fernandez, we held that the plaintiff did not establish, prima facie, that DaimlerChrysler, A.G., conducted activities in New York which bore a "substantial relationship" or an "articulable nexus" to the action (id. at 767). In that case, DaimlerChrysler, A.G., did not manufacture the subject Jeep or the allegedly defective parts. It did not sell the vehicle to the [*6]plaintiff.
Also distinguishable is Krajewski v Osterlund, Inc. (111 AD2d 905). In Krajewski, the plaintiff was in a motor vehicle accident in Indiana when the rear axle of a 1974 Diamond Reo truck broke loose and struck his vehicle. The plaintiff commenced an action in New York against Osterlund, Inc. (hereinafter Osterlund), a Pennsylvania corporation. The defendants moved to dismiss the complaint for lack of personal jurisdiction. In Krajewski, this Court found no "articulable nexus" between the alleged business transacted in New York and the cause of action sued upon (id. at 906). The defendant, Osterlund, did not manufacture the vehicle in question. The vehicle in question was manufactured by Diamond Reo Trucks, Inc., a Michigan corporation that had previously filed for bankruptcy in 1975 (see id. at 905). Although Osterlund did manufacture other vehicles that it sold in New York, the plaintiff failed to set forth an "articulable nexus" between that business in New York and the cause of action sued upon (id. at 906).
Further, Ford's and Goodyear's reliance on Pichardo v Zayas (122 AD3d 699) is misplaced. In Pichardo, the plaintiff, a resident of New Jersey, allegedly was injured when cutting a piece of plywood with a circular saw in preparation for laying tile at the defendants' home in New Jersey. The defendants were served with process in New Jersey. The action was commenced in New York. The defendants moved to dismiss the complaint pursuant to CPLR 3211(a)(8) for lack of personal jurisdiction. On appeal, this Court reversed the Supreme Court and held that the relationship between the causes of action and the defendants' activities in New York were too insubstantial to warrant a New York court's exercise of personal jurisdiction pursuant to CPLR 302(a)(1) (see id. at 701). In Pichardo, the only tie to New York was that the agreement to perform the work was reached in New York. Notably, in determining whether an "articulable nexus" or "substantial relationship" exists to meet the second prong of the CPLR 302(a)(1) inquiry, this Court looked to situs of the cause of action (id.). We noted that, although the agreement was reached in New York, the plaintiff's cause of action before us was not one for breach of the contract. Rather, the complaint sounded in negligence, as the plaintiff alleged that the defendants provided him with a defective saw, which occurred in New Jersey (see id.).
2. Due Process/Minimum Contacts
When all the requirements of CPLR 302 are met, the exercise of personal jurisdiction still must comport with constitutional due process requirements (see International Shoe Co. v Washington, 326 US at 310; Williams v Beemiller, Inc., 33 NY3d 523; D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 299; Rushaid v Pictet & Cie, 28 NY3d at 330; LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210, 216; Sacco v Reel-O-Matic, Inc., 183 AD3d 567). While there is significant overlap with CPLR 302, "because New York's long-arm statute is not coextensive with the limits of the Due Process Clause, this requires a separate inquiry" (SUEZ Water N.Y. Inc. v E.I. du Pont de Nemours & Co., 578 F Supp 3d 511, 529 [SD NY]; see D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 299-300). "[W]hile 'personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare'" (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 299-300, quoting Rushaid v Pictet & Cie, 28 NY3d at 331).
The due process analysis is twofold. First, the defendant must have "minimum contacts" with New York such that the defendant should reasonably anticipate being "haled" into court in New York (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 300 [internal quotation marks omitted]; see LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 216; see also Sharbat v Iovance Biotherapeutics, Inc., 2021 WL 1164717, 2021 US Dist LEXIS 58328 [SD NY, 20 Civ. 1391 (ER)]). With respect to due process, "[a] non-domiciliary tortfeasor has minimum contacts with the forum State . . . if it purposefully avails itself of the privilege of conducting activities within the forum State" thus invoking the benefits and protections of the forum state's laws (LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 216 [internal quotation marks omitted]; see Hanson v Denckla, 357 US 235, 253; Williams v Beemiller, Inc., 33 NY3d at 528). "This test envisions something more than the 'fortuitous circumstance' that a product sold in another state later makes its way into the forum jurisdiction through no marketing or other effort of defendant" (Williams v Beemiller, Inc., 33 NY3d at 528, quoting World-Wide Volkswagen Corp. v Woodson, 444 US 286, 295).
"The second element, in essence, asks whether personal jurisdiction is reasonable under the circumstances of the particular case" (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 300 [internal quotation marks omitted]). This is an assessment of reasonableness or whether personal jurisdiction offends "notions of fair play and substantial justice" and calls for consideration of five factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in [*7]obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies (Rushaid v Pictet & Cie, 28 NY3d at 331 [internal quotation marks omitted]; see Asahi Metal Indus. Co. v Superior Court of Cal., Solano City, 480 US 102, 113; Burger King Corp. v Rudzewicz, 471 US 462, 477; Sharbat v Iovance Biotherapeutics, Inc., 2021 WL 1164717, 2021 US Dist LEXIS 58328). "Where minimum contacts exist, the defendant has the burden to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable'" (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 300, quoting LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 217-218).
Based on the record before us, the exercise of specific jurisdiction over Ford and Goodyear comports with due process (see Ford Motor Co. v Montana Eighth Jud. Dist. Ct., __ US at __, 141 S Ct at 1017; SUEZ Water New York Inc. v E.I. du Pont de Nemours & Co., 578 F Supp 3d 511). Initially, it is noted that, as stated above, in this case Ford and Goodyear concede that they had sufficient "minimum contacts" with New York. Therefore, the only remaining question is whether Ford and Goodyear have met their burden of presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable" (LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 217-218; see D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 300). We conclude that Ford and Goodyear have failed to meet this burden.
Ford and Goodyear have failed to present any compelling argument as to why the exercise of jurisdiction is unreasonable (see D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 300). Rather, Ford and Goodyear contend that exercising jurisdiction over them would violate due process because this suit has "no connection" with and does not "arise out of or relate to" their contacts in this state, completely ignoring the two-part due process analysis applied by the Court of Appeals to ensure that exercise of personal jurisdiction under CPLR 302 comports with federal due process. They fail to present any reason why the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice (see Rushaid v Pictet & Cie, 28 NY3d at 331).
Under the circumstances of this case, jurisdiction is reasonable. There is no discernible difference for companies such as Ford or Goodyear whether they defend an action in New York or Virginia, where the accident occurred. However, New York has an interest in adjudicating the dispute, as it is the residence of both Aybar and the defendant, US Tires, as well as the location of the alleged breach in this action.
III. Conclusion
The Supreme Court properly denied the separate motions of Ford and Goodyear pursuant to CPLR 3211(a)(8) to dismiss the complaint insofar as asserted against each of them for lack of personal jurisdiction.
Accordingly, we affirm the order insofar as appealed from.
In light of our determination, we need not reach the parties' remaining contentions.
CONNOLLY, J.P., CHRISTOPHER and DOWLING, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs to the defendant third-party plaintiff-respondent payable by the third-party defendants-appellants.
ENTER:
Maria T. Fasulo
Clerk of the Court