WCVAWCK-Doe v Boys & Girls Club of Greenwich, Inc. (2023 NY Slip Op 02026)

WCVAWCK-Doe v Boys & Girls Club of Greenwich, Inc.

2023 NY Slip Op 02026

Decided on April 19, 2023

Appellate Division, Second Department

Christopher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 19, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
FRANCESCA E. CONNOLLY
LINDA CHRISTOPHER
BARRY E. WARHIT, JJ.

2021-06641

[*1]WCVAWCK-Doe, appellant, 
v
Boys & Girls Club of Greenwich, Inc., respondent. (Westchester County Index No. 63627/20)

APPEAL by the plaintiff, in an action, inter alia, to recover damages for negligent supervision, from an order of the Supreme Court, Nassau County (Part CVA-R) (Steven M. Jaeger, J.), dated August 16, 2021. The order granted the defendant's motion pursuant to CPLR 3211(a) to dismiss the complaint.

Cascione, Purcigliotti & Galluzzi, P.C., Eastchester, NY (Thomas G. Cascione of counsel), for appellant.
Robinson & Cole LLP, New York, NY (Jeffrey White and Janet Kljyan of counsel), for respondent.

CHRISTOPHER, J.

OPINION & ORDER
This appeal presents the opportunity to consider the analysis to be employed when determining whether a plaintiff has made a prima facie showing that personal jurisdiction over a nondomiciliary exists pursuant to CPLR 302(a)(2), the section of the long-arm statute permitting the exercise of jurisdiction over a nondomiciliary who commits a tortious act within the state. Upon determining that the plaintiff demonstrated, prima facie, that the defendant committed a tortious act within New York in accordance with CPLR 302(a)(2), we then consider, based on the arguments herein, whether minimum contacts required under federal constitutional due process are satisfied. For the reasons that follow, we find that the basis for exercising personal jurisdiction herein pursuant to CPLR 302(a)(2) comports with federal constitutional due process based on the commission of a tortious act within the state.
Factual and Procedural Background
In October 2020, the plaintiff, a resident of Connecticut, commenced this action alleging, inter alia, negligent supervision and negligent infliction of emotional distress, pursuant to the revival statute enacted as part of New York's Child Victims Act (see CPLR 214-g), against the defendant, Boys & Girls Club of Greenwich, Inc. (hereinafter the Club), to recover damages for injuries he allegedly sustained as a result of sexual abuse committed against him by another Club youth while the plaintiff was a member of the Club. The Club is a Connecticut not-for-profit corporation with its principal place of business in Greenwich. As part of its summer camp program, the Club supervised field trips, including trips to Yankees and/or Mets games and Rye Playland (hereinafter the amusement park) in New York.
The plaintiff alleges that in 1975 to 1976, when he was 13 or 14 years old, he was sexually and physically abused on 9 or 10 occasions by another member of the Club, mostly in facilities owned or occupied by the Club, but also on one occasion in New York. The plaintiff alleges that the one instance of sexual abuse that occurred in New York was during a Club-[*2]supervised field trip to the amusement park. He alleges, inter alia, that the Club's failure to properly supervise its members during this field trip resulted in another member of the club sexually abusing him while at the amusement park.
The Club moved pursuant to CPLR 3211(a) to dismiss the complaint, inter alia, for lack of personal jurisdiction (see CPLR 3211[a][8]). In an order dated August 16, 2021, the Supreme Court granted the motion on that ground, finding CPLR 302(a)(2), New York's long-arm statute, inapplicable. The plaintiff appeals.
Discussion
Background
"Under modern jurisprudence, a court may assert general all-purpose jurisdiction or specific conduct-linked jurisdiction over a particular defendant" (Aybar v Aybar, 169 AD3d 137, 142-143, affd 37 NY3d 274; see Daimler AG v Bauman, 571 US 117, 122). "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State" (Ford Motor Co. v Montana Eighth Jud. Dist. Ct., __ US __, __, 141 S Ct 1017, 1024, quoting Goodyear Dunlop Tires Operations, S.A. v Brown, 564 US 915, 919). General jurisdiction extends to any claim against the defendant, and "[t]hose claims need not relate to the forum State or the defendant's activity there" (Ford Motor Co. v Montana Eighth Jud. Dist. Ct., __ US at __, 141 S Ct at 1024).
However, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation" (Goodyear Dunlop Tires Operations, S.A. v Brown, 564 US at 919 [alterations and internal quotation marks omitted]; see Aybar v Aybar, 169 AD3d at 143).
New York's Long-Arm Statute
Specific jurisdiction over a nondomiciliary defendant in New York is obtained through CPLR 302, the long-arm statute (see Aybar v US Tires & Wheels of Queens, LLC, 211 AD3d 40, 48; Fanelli v Latman, 202 AD3d 758, 759). CPLR 302(a) provides, inter alia, that
"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, . . . who in person or through an agent:
"1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
"2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
"3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."
While our Court has had the opportunity to review specific jurisdiction under CPLR 302(a)(1) (see Aybar v US Tires & Wheels of Queens, LLC, 211 AD3d 40), we turn our attention to consider the reach of the long-arm statute pursuant to CPLR 302(a)(2).
"The party seeking to assert personal jurisdiction bears the ultimate burden of proof to establish a basis for such jurisdiction" (Sacco v Reel-O-Matic, Inc., 183 AD3d 567, 568; see America/Intl. 1994 Venture v Mau, 146 AD3d 40, 51). "However, to successfully oppose [a CPLR 3211(a)(8) motion to dismiss for lack of personal jurisdiction], the plaintiff need only make a prima facie showing that the defendant was subject to the personal jurisdiction of the court" (America/Intl. 1994 Venture v Mau, 146 AD3d at 51). "The facts alleged in the complaint and affidavits in opposition to such a motion to dismiss are deemed true and construed in the light most favorable to the plaintiff, and all doubts are to be resolved in favor of the plaintiff" (Fanelli v Latman, 202 AD3d at 759 [internal quotation marks omitted]; see Nick v Schneider, 150 AD3d 1250, 1251).
Here, viewing the plaintiff's allegations in the light most favorable to him, the plaintiff demonstrated, prima facie, that the Club, a Connecticut not-for-profit corporation, committed a tortious act within the State of New York in accordance with the meaning of CPLR 302(a)(2), the subdivision of the long-arm statute at issue on this appeal. The plaintiff alleged that the Club organized a field trip for its members to the amusement park in New York, and while at the amusement park, the Club failed to properly supervise its members, resulting in the plaintiff being sexually assaulted by another member. Thus, the plaintiff has alleged that the Club committed the [*3]tortious acts of negligent supervision and negligent infliction of emotional distress while in New York. Contrary to the Club's contention, notwithstanding that a majority of the abuse alleged by the plaintiff occurred in Connecticut, personal jurisdiction can be established under CPLR 302(a)(2), with regard to the one incident alleged to have occurred in New York.
Federal Constitutional Due Process
Once it has been determined that a plaintiff has alleged facts that satisfy a basis for long-arm jurisdiction under CPLR 302, the next step in the jurisdictional analysis is to determine whether the exercise of personal jurisdiction under the long-arm statute comports with federal constitutional due process requirements (see LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210, 216-219; Nick v Schneider, 150 AD3d at 1252; Weitz v Weitz, 85 AD3d 1153, 1154; Opticare Acquisition Corp. v Castillo, 25 AD3d 238, 247). The United States Supreme Court has held that a state may exercise jurisdiction over a nondomiciliary defendant provided that it has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" (International Shoe Co. v Washington, 326 US 310, 316 [internal quotation marks omitted]; see Rushaid v Pictet & Cie, 28 NY3d 316, 331). The due process analysis is a two-part inquiry, the first part being whether the defendant has minimum contacts with the forum state (see Aybar v US Tires & Wheels of Queens, LLC, 211 AD3d at 52-53; Opticare Acquisition Corp. v Castillo, 25 AD3d at 247-248). "The minimum contacts test has come to rest on whether a defendant's conduct and connection with the forum State are such that it should reasonably anticipate being haled into court there" (Rushaid v Pictet & Cie, 28 NY3d at 331 [internal quotation marks omitted]; see LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 216). "Such minimum contacts exist where a defendant purposefully avails itself of the privilege of conducting activities within the forum State" (Rushaid v Pictet & Cie, 28 NY3d at 331 [internal quotation marks omitted]), "thus invoking the benefits and protections of [the forum state's] laws" (Hanson v Denckla, 357 US 235, 253; see Williams v Beemiller, Inc., 33 NY3d 523, 528). "The constitutional inquiry 'focuses on the relationship among the defendant, the forum, and the litigation'" (Williams v Beemiller, Inc., 33 NY3d at 529, quoting Keeton v Hustler Magazine, Inc., 465 US 770, 775 [internal quotation marks omitted]). The requirement of minimum contacts "ensure[s] that a defendant is not dragged into a jurisdiction to answer in litigation brought there as a result of random, fortuitous, or attenuated contacts" (Opticare Acquisition Corp. v Castillo, 25 AD3d at 247 [internal quotation marks omitted]).
However, "[m]inimum contacts alone do not satisfy due process" (LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 217). The second part of the due process inquiry is whether "defending a suit in the forum State . . . comport[s] with traditional notions of fair play and substantial justice" (id. [internal quotation marks omitted]). "This is in essence another way of asking what is reasonable" (id.). Thus, where a "plaintiff has established the requisite minimum contacts, a defendant seeking to defeat jurisdiction as constitutionally impermissible carries the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable" (Opticare Acquisition Corp. v Castillo, 25 AD3d at 248 [internal quotation marks omitted]).
"The factors to be considered in making that assessment are: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies" (id.; see Asahi Metal Industry Co. v Superior Court of Cal., Solano Cty., 480 US 102, 113; Aybar v US Tires & Wheels of Queens, LLC, 211 AD3d at 53).
Here, having found that the plaintiff alleged facts sufficient to establish a prima facie basis for long-arm jurisdiction under CPLR 302(a)(2), we must now determine whether the Club has "minimum contacts with [New York] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" (International Shoe Co. v Washington, 326 US at 316 [internal quotation marks omitted]). As previously set forth, the first part of the due process inquiry is whether the Club has minimum contacts with New York. The question before us is whether the commission of a tort within the state by a nondomiciliary defendant in accordance with CPLR 302(a)(2) is sufficient, without more, to establish the requisite minimum contacts.
To begin our analysis regarding minimum contacts, it is important to note the historical basis for New York's long-arm statute which arose out of the need to define the basis for [*4]state exercise of jurisdiction over nonresidents (see Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443, 452). It was an attempt to set forth the definition of minimum contacts.
"Taking advantage of the Supreme Court's broadening of the bases for the exercise of personal jurisdiction over nondomiciliaries, the Legislature of this State, in 1962, following a study and a recommendation by the New York Advisory Committee on Practice and Procedure, enacted CPLR 302. Modeled upon a provision of the Illinois Civil Practice Act (Ill. Stat. Ann., ch. 110, § 17 [Smith-Hurd, 1956]), section 302 discarded the concept of 'doing business' as the exclusive test of jurisdiction and provided, instead, insofar as here pertinent, that personal jurisdiction may be asserted over any nondomiciliary if, 'in person or through an agent[,]' he [or she] 'transacts any business within the state' or 'commits a tortious act within the state,' as long as the particular cause of action asserted is one 'arising from' any of such acts" (id. at 452 [footnote omitted]).
The analysis of the United States District Court for the Southern District of New York in the following cases is instructive on the issue of minimum contacts in cases where the basis for long-arm jurisdiction is CPLR 302(a)(2). In Honda Assoc., Inc. v Nozawa Trading, Inc. (374 F Supp 886 [SD NY]), the District Court addressed the issue of personal jurisdiction over a nondomiciliary in an action alleging trademark infringement. The court concluded that the California defendant's mail order operations in New York fell "within the 'plain and precise' meaning of [CPLR 302(a)(2)], which requires no specified level of activity within the State, but only that the plaintiff suffer some damage as a result of a tortious act committed by the defendant or its agent in New York" (id. at 889, quoting Feathers v McLucas, 15 NY2d 443, 460)[FN1]. It is noted that the defendant in Honda Assoc., Inc. appears to have had very limited New York contacts. During the four-year period of 1970 to 1973, the defendant allegedly received from New York only three mail orders for the infringing goods, representing "only about 1/100 of 1 percent of its total martial arts sales and 1/300 of 1 percent of its sales of all goods during this period" (Honda Assoc., Inc. v Nozawa Trading, Inc., 374 F Supp at 888). Moreover, the defendant never had an office, property, bank account, phone listing, post office box, or sale representative in New York (see id.).
In Factors Etc., Inc. v Pro Arts, Inc. (444 F Supp 288, 289 [SD NY]), the District Court addressed the issue of personal jurisdiction over a nondomiciliary in an unfair competition case and found that the nondomiciliary defendant's allegedly "infringing . . . poster" was sold in New York. Quoting Honda Assoc., Inc. the court found that the defendant's conduct fell "squarely within [CPLR] 302(a)(2), 'which requires no specified level of activity within the State, but only that the plaintiff suffer some damage as a result of a tortious act committed by the defendant or its agent in New York'" (id. at 291, quoting Honda Assoc., Inc. v Nozawa Trading, Inc., 374 F Supp at 889). The nondomiciliary defendant in Factors Etc., Inc. also had minimal contact with New York, as it alleged that less than one percent of its posters were sold and delivered to New York (see Factors Etc., Inc. v Pro Arts, Inc., 444 F Supp at 290).
Moreover, with regard to the exercise of jurisdiction over nondomiciliaries who commit torts within a state's geographical boundaries, the United States Supreme Court wrote, "[a] state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort" (Keeton v Hustler Magazine, Inc., 465 US at 776 [internal quotation marks omitted]).
In Nick v Schneider (150 AD3d at 1253) and Weitz v Weitz (85 AD3d at 1154), this Court found that the plaintiffs each made a prima facie showing that the nondomiciliary defendant committed a tortious act within New York, and was therefore subject to personal jurisdiction [*5]pursuant to CPLR 302(a)(2)[FN2]. In Nick, the plaintiffs alleged that the defendant converted funds held in New York (see Nick v Schneider, 150 AD3d at 1253), and in Weitz, the plaintiff alleged that the defendant fraudulently transferred assets originally located in New York (see Weitz v Weitz, 85 AD3d at 1154). Turning to the due process analysis, in each case, this Court stated that the plaintiffs showed that the defendant had requisite minimum contacts with New York, and that the defendant failed to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.
In Ed Moore Adv. Agency v I.H.R., Inc. (114 AD2d 484), citing to CPLR 302(a)(2), this Court found that the defendant's motion to dismiss the complaint for lack of personal jurisdiction should have been denied "since the facts as alleged tend to prove the [California defendant's] participation in tortious conduct within New York" (Ed Moore Adv. Agency v I.H.R., Inc., 114 AD2d at 486). The plaintiff had alleged that the defendant corporation participated in the fraudulent transfer of assets from New York to California, while the defendant's president had averred the corporation was incorporated in California, did not maintain an office in New York, and did not transact any business within New York (see id. at 485). Similarly, in an action to recover damages for false arrest, false imprisonment, intentional infliction of emotional distress, and malicious prosecution, this Court found that New York had personal jurisdiction over the City of Philadelphia under CPLR 302(a)(2), as a cause of action was set forth against that defendant for its commission of a tortious act within New York (see Johnson v City of Newburgh, 46 AD2d 663, 663). Citing to CPLR 302(a)(2), this Court also found that a Florida defendant's motion to dismiss certain causes of action for lack of personal jurisdiction was properly denied, where facts tending to prove her participation in fraudulent conveyances within New York were shown (see Neilson v Sal Martorano, Inc., 36 AD2d 625, 626). These cases support the proposition that alleging the commission of a tort within the state is sufficient to confer jurisdiction, and although not discussed, correspondingly sufficient to establish that the defendant has the required minimum contacts with the forum.
Further, CPLR 302(a)(2) has been described as "the conceptual descendent of the 'non-resident motorist statute,' § 253 of the Vehicle and Traffic Law" (Vincent C. Alexander, Prac Commentaries, McKinney's Cons Laws of NY, CPLR C302:10). Vehicle and Traffic Law § 253(1) provides, inter alia, that a nonresident's use or operation of a vehicle in this state, or ownership of a vehicle being used or operated in New York, "shall be deemed equivalent to an appointment by such non-resident of the secretary of state to be his [or her] true and lawful attorney," with regard to service of process for any claims "growing out of any accident or collision" from the use of such vehicle in New York. Although jurisdiction under Vehicle and Traffic Law § 253 is based on the implied consent of a nonresident to service of process in New York with regard to claims emanating from accidents or collisions from the use of a vehicle in New York, an analogy can be drawn between this statute and CPLR 302(a)(2) which confers long-arm jurisdiction over nondomiciliaries who commit a tortious act within the state (see generally Davis v Trey, 187 AD2d 409, 409 [finding that in a personal injury action arising from a motor vehicle accident in New York, personal jurisdiction could be obtained over a nonresident and nondomiciliary who allegedly caused the accident, pursuant to both CPLR 302(a)(2) and Vehicle and Traffic Law § 253]). However, we are cognizant that, as pointed out by the Court of Appeals in Longines-Wittnauer Watch Co. v Barnes & Reinecke (15 NY2d at 454 n 4), "section 302 rests not on any theory of implied consent on the part of the defendant to submit to this State's jurisdiction if he [or she] commits acts herein but, rather, on New York's inherent power to exercise jurisdiction over a nonresident defendant who has the requisite minimal contacts with it."
Applying these principles to the instant matter, we find that since the plaintiff has demonstrated, prima facie, that the Club, a nondomiciliary defendant, allegedly committed a tortious act in New York within the meaning of CPLR 302(a)(2), that is, in and of itself, sufficient to establish minimum contacts such that the Club "should reasonably anticipate being haled into court" in New York (Rushaid v Pictet & Cie, 28 NY3d at 331; see Nick v Schneider, 150 AD3d at 1253-1254; Weitz v Weitz, 85 AD3d at 1154; Ed Moore Adv. Agency v I.H.R., Inc., 114 AD2d at 486; see also Factors Etc., Inc. v Pro Arts, Inc., 444 F Supp at 291; Honda Assoc., Inc. v Nozawa Trading, [*6]Inc., 374 F Supp at 889). Here, arguing against the exercise of jurisdiction, the Club asserts that it has no jurisdictional contacts in New York; it is a Connecticut not-for-profit corporation with its principal place of business in Greenwich, Connecticut; all of its employees work in Connecticut; all of the Club members must either live in Greenwich or have a parent who works in Greenwich; at no time in its history has it had any property, offices, or other facilities in New York; and the majority of the Club's revenue is derived from Connecticut. However, contrary to the Club's contentions, the fact that contacts of this nature may be absent is not dispositive. The Club's presence in New York was the result of a purposeful, deliberate action on its part of planning a trip to the amusement park as part of its summer camp program (see Nick v Schneider, 150 AD3d at 1253; Weitz v Weitz, 85 AD3d at 1154; see generally LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 217). The Club, citing to World-Wide Volkswagon Corp. v Woodson (444 US 286), contends that it was purely fortuitous that this one incident of abuse occurred in New York, and therefore it could not satisfy the requirement of minimum contacts. However, the facts of this matter are in sharp contrast to those in World-Wide Volkswagon Corp., where the United States Supreme Court found that an Oklahoma court could not exercise personal jurisdiction over a nonresident automobile retail dealer and its regional distributor in a products liability action, as they had no contacts with Oklahoma (see id. at 287-299). In that action, the plaintiffs had sought "to base jurisdiction [in Oklahoma] on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma" (id. at 295). Here, the Club's presence in New York was not a random, fortuitous event; the Club entered the state's geographical boundaries with its members, and, as alleged by the plaintiff, while in New York, it committed a tortious act when it failed to supervise the members, resulting in the plaintiff being sexually assaulted by another member. Moreover, the trip to the amusement park in New York was not necessarily an isolated occurrence; the plaintiff has alleged, and the Club has not disputed, that as part of its summer camp program, the Club also supervised field trips to Yankees and/or Mets games in New York.
Where, as here, the plaintiff has established the requisite minimum contacts, as previously set forth, we must then engage in the second part of the due process inquiry; that is, whether defending a suit in New York comports with "traditional notions of fair play and substantial justice" (LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 216 [internal quotation marks omitted]). The Club "seeking to defeat jurisdiction as constitutionally impermissible, carrie[d] the burden of presenting a 'compelling case' that the 'presence of some other considerations would render jurisdiction unreasonable'" (Opticare Acquisition Corp. v Castillo, 25 AD3d at 248, quoting Burger King Corp. v Rudzewicz, 471 US 462, 477). Here, the Club has failed to present a "compelling case" that some other consideration would render jurisdiction unreasonable (Burger King Corp. v Rudzewicz, 471 US at 477; see Nick v Schneider, 150 AD3d at 1254; Weitz v Weitz, 85 AD3d at 1154; Opticare Acquisition Corp. v Castillo, 25 AD3d at 248). Accordingly, the exercise of jurisdiction over the Club in New York would "comport with 'fair play and substantial justice'" (Burger King Corp. v Rudzewicz, 471 US at 476, quoting International Shoe Co. v Washington, 326 US at 320; see Opticare Acquisition Corp. v Castillo, 25 AD3d at 248).
With regard to CPLR 214-g, the revival statute, enacted under the Child Victims Act, S.H. v Diocese of Brooklyn (205 AD3d 180), does not preclude determining that it is appropriate for New York to exercise long-arm jurisdiction in this case. While S.H. discussed the legislative history of the revival statute and found that the history supports the proposition that the statute was enacted for the benefit of New York residents, this was in the context of the facts of S.H., wherein the alleged acts of abuse occurred in Florida. In S.H. we held, "that under the circumstances of this case, CPLR 214-g is not available to nonresident plaintiffs where the alleged acts of abuse occurred outside New York" (id. at 182 [emphasis added]). In the instant case, while the plaintiff is not a New York resident, unlike the situation in S.H., the alleged abuse occurred in New York. Further, the issue in S.H. was whether the statute of limitations had expired; in the instant matter, the issue is one of personal jurisdiction. However, at this juncture, our inquiry is limited to whether New York may exercise personal jurisdiction over the Club (see Keeton v Hustler Magazine, Inc., 465 US at 778).
We note that our finding that the Club is subject to personal jurisdiction pursuant to CPLR 302(a)(2) is limited to the one act of sexual abuse alleged to have occurred in New York.
The plaintiff's contention that he should be afforded an opportunity to conduct jurisdictional discovery is improperly raised for the first time on appeal (see generally Nationstar Mtge., LLC v Gayle, 191 AD3d 1002, 1003).
The plaintiff's remaining contentions are without merit.
Therefore, the Supreme Court should have denied those branches of the defendant's motion which were pursuant to CPLR 3211(a) to dismiss the causes of action alleging negligent supervision and negligent infliction of emotional distress with respect to the incident alleged to have occurred in New York.
Accordingly, the order is modified, on the law, by deleting the provision thereof granting those branches of the defendant's motion which were pursuant to CPLR 3211(a) to dismiss the causes of action alleging negligent supervision and negligent infliction of emotional distress with respect to the incident alleged to have occurred in New York, and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed.
DILLON, J.P., CONNOLLY and WARHIT, JJ., concur.
ORDERED that the order is modified, on the law, by deleting the provision thereof granting those branches of the defendant's motion which were pursuant to CPLR 3211(a) to dismiss the causes of action alleging negligent supervision and negligent infliction of emotional distress with respect to the incident alleged to have occurred in New York, and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed, with costs to the plaintiff.
ENTER:
Maria T. Fasulo
Clerk of the Court

Footnotes

Footnote 1: The cite to Feathers refers to the Court of Appeals' decision wherein the Court looked at the plain language and legislative history of the statute, and determined that a mere occurrence of an injury in this state is insufficient to confer jurisdiction pursuant to CPLR 302(a)(2) which only "confer[s] . . . personal jurisdiction over a non-domiciliary whose act in the state gives rise to a cause of action" (Feathers v McLucas, 15 NY2d at 460 [internal quotation marks omitted]). The Court further stated that the language of CPLR 302(a)(2) is "too plain and precise" to permit it to be read as if it were synonymous with "commits a tortious act without the state which causes injury within the state" (Feathers v McLucas, 15 NY2d at 460). 

Footnote 2: In Nick, this Court also found that the plaintiffs made a prima facie showing that jurisdiction was proper under CPLR 302(a)(1) (see Nick v Schneider, 150 AD3d at 1253).