SOS Capital v Recycling Paper Partners of PA, LLC (2023 NY Slip Op 04480)

SOS Capital v Recycling Paper Partners of PA, LLC

2023 NY Slip Op 04480

Decided on August 31, 2023

Appellate Division, First Department

PITT-BURKE, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 31, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern
David Friedman Tanya R. Kennedy Saliann Scarpulla Bahaati E. Pitt-Burke

Index No. 159698/20 Appeal No. 348 Case No. 2022-04612 

[*1]SOS Capital, Plaintiff-Respondent,
v
Recycling Paper Partners of PA, LLC et al., Defendants-Appellants.

Defendants appeal from an order of the Supreme Court, New York County (Arlene Bluth, J.), entered November 16, 2021, which denied their motion to vacate a default judgment entered against them.

Silverberg P.C., Central Islip (Karl Silverberg of counsel), for appellants.
Hodgson Russ LLP, Buffalo (James J. Zawodzinski, Jr. of counsel), and Berkovitch & Bouskila PLLC, New York (Steven Berkovitch and Ariel Bouskila of counsel), for respondent.

PITT-BURKE, J.

This appeal presents the opportunity to reaffirm this Court's position on what constitutes a tort committed within the boundaries of this state for purposes of New York's long-arm jurisdiction under CPLR 302(a)(2). For the reasons that follow, we find that the language "within the state" in CPLR 302(a)(2), means that a nondomiciliary is only subject to New York's long-arm jurisdiction under subsection (a)(2) when they have committed a tortious act, in person or through an agent, while physically present within the boundaries of this state.
Background
This case arises out of an agreement for the purchase of KN95 masks, between plaintiff, SOS Capital, a New York limited liability company with its principal place of business in New York County, and corporate defendant Recycling Paper Partners of PA LLC (RPP), a Pennsylvania limited liability company with its principal place of business in Harrisburg, Pennsylvania. Individual defendants, Stuart Polsky and Scott Polsky were principals of RPP, and domiciled in Florida and Pennsylvania, respectively, at the time the agreement was executed.
Prior to entering the agreement, RPP provided plaintiff with an image of the masks being sold. The image, which the individual defendants sent to plaintiff in New York via email and on behalf of RPP, depicted KN95 mask packaging that contained a U.S. Food and Drug Administration (FDA) logo, evidencing that the masks were approved for medical use. After plaintiff agreed to purchase the masks, the individual defendants sent an invoice/purchase order to plaintiff on behalf of RPP.
On April 28, 2020, plaintiff entered into the agreement with RPP. Pursuant to the agreement, plaintiff agreed to purchase one million FDA-approved KN95 masks for a total purchase price of $2,140,000 and paid an initial upfront deposit of $633,000. In its complaint, plaintiff alleges that defendants knew it was a buyer-intermediary and had entered into the agreement with the intent to resell the masks to a third party. Therefore, plaintiff alleged, the specific quality of the masks (i.e., FDA-approved and medically-purposed masks) was a material term of the agreement.
Plaintiff further contends that it entered into the agreement based on defendants' representation that the masks were FDA-approved and in reliance on the image provided by RPP. Specifically, plaintiff's CEO averred in an affidavit that based upon its prior transactions with RPP, it had no reason to believe defendants' representations regarding the quality of the [*2]masks "would be false." In light of these prior dealings, he averred that plaintiff did not fully investigate the transaction and was effectively "lulled into a false sense of security." He further submitted that defendants, at the time of contracting, were "aware of the material discrepancy between what they were selling to [plaintiff] and what they promised."
After receiving plaintiff's deposit for the order, the masks were shipped to a warehouse in California where it was discovered that they did not conform to the quality standard represented in the agreement. Specifically, the packaging for the masks that were shipped did not contain an FDA logo and indicated they were for nonmedical use. Due to the masks nonmedical use designation, plaintiff refused to accept delivery and sought return of its deposit.
Although the individual defendants acknowledged that the parties intended the masks to be FDA-approved, they claim this requirement was not material to the agreement and that the sales order only required RPP to coordinate the delivery of the KN95 masks. Defendants refused to return plaintiff's deposit, asserting that it was nonrefundable.
Procedural History
Plaintiff commenced this action in November 2020 and service upon all three defendants was completed by January 4, 2021. The amended complaint asserted five causes of action: (1) breach of contract; (2) sale of nonconforming goods; (3) constructive fraud; (4) deceit; and (5) fraud.
As relevant to this appeal, it is undisputed that all defendants are domiciled in states other than New York. However, plaintiff alleged that jurisdiction was properly obtained over defendants pursuant to CPLR 302(a), because this action arises out of defendants' contact within New York State pursuant to the agreement entered into by the parties and the misrepresentation of material facts made to plaintiff within this state. Plaintiff further alleged that venue was proper because it maintained its principal place of business in New York County, the parties' contract was to be performed in New York County and because the acts or omissions giving rise to this action occurred within the State of New York.
On April 28, 2021, plaintiff moved for a default judgment due to defendants' failure to appear. On May 25, 2021, Supreme Court granted plaintiff's motion for default judgment as to liability and set the matter down for an inquest to determine damages. On or about June 28, 2021, defendants retained counsel for purposes of settling this matter, but not for purposes of litigation. Following an inquest at which only plaintiff appeared, Supreme Court entered judgment in favor of plaintiff in the amount of $1,273,099.38.
Defendants subsequently moved to vacate their default pursuant to CPLR 5015(a), and to dismiss the action pursuant to CPLR 3211(a)(8) on the grounds that Supreme Court lacked subject matter jurisdiction and personal jurisdiction over the individual defendants.
Defendants further argued that [*3]their motion to vacate should be granted pursuant to CPLR 5015(a)(1), because they had both a reasonable excuse for their failure to answer and a meritorious defense to the underlying causes of action. In this regard, defendants did not contest service of the summons and amended complaint. Instead, they argued that they reasonably believed they would be served with all pleadings in the matter, or at the very least, that their attorney would be served with the pleadings once they were retained. Defendants also asserted that by putting plaintiff on notice of the lack of subject matter jurisdiction and by commencing settlement negotiations, they didn't anticipate that plaintiff would proceed to default and default judgment.
As to its alleged meritorious defenses justifying vacatur of their default, defendants argued that plaintiff's misconduct in not serving the pleadings by mail, email or through their counsel constituted misconduct of an adverse party, and that their default judgment should be vacated pursuant to CPLR 5015(a)(3). Defendants also argued, inter alia, that although the parties understood that the ordered masks were to be FDA-approved, FDA approval was not a material term of the agreement.
Plaintiff opposed defendants' motion, arguing, inter alia, that subject matter jurisdiction was properly predicated upon the corporate defendant's having contracted to sell goods to plaintiff in New York, that the individual defendants were subject to personal jurisdiction in New York because they each transacted business in New York and committed torts in New York, that defendants had not offered a reasonable excuse for their default or a meritorious defense, and that plaintiff entered into a Merchant Cash Advance agreement (MCA) with RPP for the purchase and sale of RPP's future receivables which resulted in a separate litigation whereby defendants also defaulted.
Supreme Court denied defendants' motion in its entirety. As relevant to this appeal, the court found that New York had subject matter jurisdiction over the action because plaintiff was a New York based entity and claimed the masks advertised by defendants were to be delivered to New York. Although the court noted that all defendants were domiciled in states other than New York, it found that sufficient facts were alleged to sustain personal jurisdiction over the individual defendants pursuant to CPLR 302(a). While the court did not indicate the specific subsection of 302(a) that conferred jurisdiction, it found that plaintiff sufficiently alleged that "defendants agreed to send masks to New York and that defendants, including the individual defendants, made fraudulent misrepresentations about the nature of those masks" (SOS Capital v Recycling Papers Partners of Pennsylvania, 2021 NY Slip Op 32317[U], *2 [Sup Ct, NY County 2021]). The court further found that it was "of no moment" that "the sales order was signed by the corporate defendant in Pennsylvania or that neither defendant [*4]was physically present in New York" (id.) The court then denied defendants' motion to vacate their default judgement, finding that they did not offer a reasonable excuse for their default. Based on this finding, the court did not reach the issue of whether a meritorious defense was provided by defendants.
Defendants appeal from the November 16, 2021 order to the extent that it denied their motion to dismiss the action insofar as asserted against the individual defendants for lack of personal jurisdiction and denied their motion to vacate the default judgment entered against all defendants. We now modify, to grant defendants' motion to vacate the default judgment as against the individual defendants and dismiss the action for lack of personal jurisdiction as against them.
Discussion
A motion to vacate a default judgment under CPLR 5015(a)(4) is usually before this Court based on a defendant's contention that jurisdiction was not obtained due to improper service. Here, however, the individual defendants do not contest proper service and instead seek to vacate the default judgment for lack of personal jurisdiction under CPLR 302(a), and upon vacatur, dismissing the complaint pursuant to CPLR 3211(a)(8). In the alternative, the individual defendants join defendant RPP, and seek a discretionary vacatur of the default judgment under CPLR 5015(a)(1).
The individual defendants seek discretionary vacatur under CPLR 5015(a)(1), a provision that assumes personal jurisdiction exists over a defaulting defendant (see Caba v Rai, 63 AD3d 578, 580-581 [1st Dept 2009]); a vacatur based on a jurisdictional objection under CPLR 5015(a)(4); and dismissal of the complaint for lack of personal jurisdiction under CPLR 3211(a)(8). Thus, we must first resolve the issue of personal jurisdiction over the individual defendants before determining whether it was appropriate for Supreme Court to deny defendants' motion for a discretionary vacatur of default pursuant to CPLR 5015(a)(1) (see Liu Yu v Ma, 145 AD3d 577, 577 [1st Dept 2016]; Wells Fargo Bank, N.A. v Jones, 139 AD3d 520, 522 [1st Dept 2016], citing David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5015:9 ["(T)he court must always rule first on the paragraph 4 jurisdictional point, which involves no discretion. Only if jurisdiction is sustained need the court go on to the paragraph 1 discretionary ground"]; Delgado v Velecela, 56 AD3d 515 [2d Dept 2008]; Roberts v Anka, 45 AD3d 752, 753 [2d Dept 2007], lv dismissed 10 NY3d 851 [2008]).[FN1]
Individual Defendants
In New York, courts may exercise personal jurisdiction over a nondomiciliary pursuant to New York's long-arm statute, CPLR 302(a). This section provides, inter alia, that New York courts may exercise personal jurisdiction over any nondomiciliary who in person or through an agent:
"(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or
"(2) commits a tortious act within [*5]the state, except as to a cause of action for defamation of character arising from the act; or
"(3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he:
"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state; or
"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]"
While each subsection may, on its own, confer personal jurisdiction upon a nondomiciliary, "a New York court may not exercise personal jurisdiction over a non-domiciliary unless two requirements are satisfied: the action is permissible under the long-arm statute (CPLR 302) and the exercise of jurisdiction comports with due process" (Williams v Beemiller, Inc., 33 NY3d 523, 528 [2019]).[FN2] Importantly, these two requirements are not mutually exclusive. Therefore, "if either the statutory or constitutional prerequisite is lacking, the action may not proceed" (id.).
The verified amended complaint does not allege, and Supreme Court did not identify, which subsection plaintiff relies on to support personal jurisdiction over the individual defendants. However, on appeal plaintiff limits its argument to CPLR 302(a)(2). Therefore, we also limit our discussion to this specific subsection.
On appeal, the individual defendants argue that New York courts may not exercise personal jurisdiction over them because they are nondomiciliaries and the undisputed evidence shows that the alleged fraudulent statements occurred outside of New York. Therefore, they contend that pursuant to CPLR 302(a)(3) there is no evidence that they, in their individual capacity, satisfy the minimum contacts required under that section.
In support of their argument, the individual defendants contend that all of their communications with plaintiff, including the alleged fraudulent statements, occurred via calls, texts and emails that took place while they were located outside of New York and solely in their capacity as representatives of RPP. They further allege that they reside outside of the state and that they did not enter New York jurisdiction for the purposes of the agreement. Specifically, they contend that the contract was not only signed outside of New York, but also that the masks were to be picked up by plaintiff in Pennsylvania.
While there is no requirement to plead the basis for jurisdiction in the complaint (see Fischbarg v Doucet, 9 NY3d 375, 385 n 5 [2007]; see also Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C302:5), when a defendant moves to dismiss a cause of action based on an absence of personal jurisdiction, the plaintiff must, as the party seeking to assert personal jurisdiction, prove that [*6]New York's long-arm statute confers jurisdiction over the nondomiciliary defendants (see Copp v Ramirez, 62 AD3d 23, 28 [1st Dept 2009]; Fischbarg, 9 NY3d at 385 n 5).
Under CPLR 302(a)(2), "[t]he mere occurrence of the injury in this State . . . cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording" (Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443, 460 [1965], cert denied sub nom. Estwing Mfg. Co. Inc. v Singer, 382 US 905 [1965]). Thus, to invoke New York's long-arm jurisdiction pursuant to CPLR 302(a)(2), we have "traditionally required the defendant's [physical] presence . . . [in New York] at the time of the tort" (Pramer S.C.A. v Abaplus Intl. Corp., 76 AD3d 89, 97 [1st Dept 2010]; see also Matter of New York Asbestos Litig., 212 AD3d 584, 587 [1st Dept 2023] [the plaintiff failed to demonstrate that the defendant was subject to jurisdiction under CPLR 302(a)(2), where the "purportedly tortious act occurred in Connecticut, not in New York"]; Peters v Peters, 101 AD3d 403, 404 [1st Dept 2012]; National Union Fire Ins. Co. of Pittsburgh v Davis, Wright, Todd, Reise & Jones, 157 AD2d 571, 572 [1st Dept 1990]). This practice is logical, as under CPLR 302(a)(2), long-arm jurisdiction over a nondomiciliary exists where a nondomiciliary "commits a tortious act within the state." It also aligns with the "modern rationale of CPLR 302(a)(2)[, which] is based on the fairness of subjecting a nondomiciliary to jurisdiction whenever . . . [their] in-state tortious conduct is the cause of local harm" (Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, CPLR C302:10).
Applying these principles to the instant matter and viewing the allegations in the light most favorable to plaintiff, we find that it has failed to demonstrate that the individual defendants, who were domiciled in Florida and Pennsylvania respectively, committed a tortious act within the State of New York in accordance with the meaning of CPLR 302(a)(2). Plaintiff contends that the individual defendants made misrepresentations to plaintiff, a resident of New York, and those statements induced plaintiff to enter into the instant agreement to its detriment.[FN3] Specifically, plaintiff alleges that the individual defendants sent emails to plaintiff in New York, containing images that falsely represented that the masks being sold were both FDA-approved and approved for medical use. Notably, however, plaintiff does not contend that RPP or the individual defendants were ever physically present in New York when they made the alleged fraudulent representations. Instead, plaintiff relies on this Court's holding in Travelers Indem. Co. v Inoue (111 AD2d 686 [1st Dept 1985]), to argue that physical presence is not a prerequisite for personal jurisdiction under CPLR 302(a)(2). However, plaintiff's reliance on our decision in Travelers is misplaced.
In Travelers, two foreign corporations conducted business [*7]with a New York corporation, whereby the president of both foreign corporations and the vice-president of the New York corporation engaged in a kickback scheme for the payment of false invoices. Importantly, the facts submitted in the affidavits and relevant documents indicated that, as part of the conspiracy, the vice president, who was deemed defendant's agent in New York, approved every fraudulent invoice in a New York office. Thus, this Court held that the affidavits submitted, in conjunction with the allegations in the complaint, reflected an overt act by defendant's agent in New York, during, and pursuant to, an alleged conspiracy, which conferred jurisdiction over the nonresident defendants within the meaning of CPLR 302(a)(2) (see Travelers, 111 AD2d at 687).
In contrast, here, there is no evidence of a conspiracy, and, most importantly, it is undisputed that neither RPP, the individual defendants, nor any of their agents committed the alleged tortious acts while physically within the boundaries of New York (but see Bernstein v Kelso & Co., 231 AD2d 314, 324-325 [1st Dept 1997] [The complaint alleged that "defendants attended meetings in New York at which the scheme to defraud plaintiff was planned and carried out, and, therefore, committed tortious acts within this State, conferring jurisdiction pursuant to CPLR 302(a)(2)"]; Wimbledon Fin. Master Fund, Ltd. v Weston Capital Mgt. LLC, 160 AD3d 596, 596-597 [1st Dept 2018]).
Similarly, plaintiff's reliance on our determination in Brax Capital Group, LLC v WinWin Gaming, Inc. (83 AD3d 591 [1st Dept 2011]) in support of its contention that the individual defendants have specifically availed themselves of jurisdiction in New York by consistently and systematically doing business with plaintiff is unavailing. In Brax Capital, we determined that personal jurisdiction was established over a defendant guarantor pursuant to CPLR 302(a)(1), because the evidence established that defendant made numerous telephone calls to individuals in New York to procure investors, that he sent individuals to New York who acted on his behalf in dealing with investment bankers to obtain financing for the corporation, and because his personal and corporate roles were intertwined.
Our holding in Brax Capital is inapposite, because here plaintiff asserts jurisdiction over the individual defendants pursuant to CPLR 302(a)(2), not CPLR 302(a)(1). Thus, the relevant inquiry is whether the individual defendants committed a tortious act within this state and not whether they have subjected themselves to the jurisdiction of New York by doing business here.[FN4] Nevertheless, the instant appeal is distinguishable from Brax Capital on its facts, because here the individual defendants were principals of RPP, not guarantors, and they conducted their duties solely in their capacity as principals (see Laufer v Ostrow, 55 NY2d 305, 313 [1982] [there was no evidence that established that the defendant, as an individual, engaged in [*8]activity in New York]) and while located within their respective domicile state (see SNS Bank, N.V. v Citibank, N.A., 7 AD3d 352, 353 [1st Dept 2004]).
Further, RPP's alleged submission to New York jurisdiction pursuant to the February 11, 2020 MCA does not bind the individual defendants to New York jurisdiction for all purposes (see Richbell Info. Services, Inc. v Jupiter Partners, L.P., 309 AD2d 288, 308 [1st Dept 2003]). Plaintiff's reliance on a contractual provision contained within the MCA and the individual defendants' capacity as guarantors of RPP's corporate indebtedness owing to plaintiff therein, is irrelevant to our initial determination here; whether the individual defendants committed a tortious act within the state sufficient to maintain personal jurisdiction pursuant to CPLR 302(a)(2).[FN5]
Similarly, plaintiff's contention that technology mandates that a tortfeasor and its agents must no longer physically enter New York to perform a tortious transaction within this state misses the mark. While we are cognizant of the role technology plays in the adaptation and application of our laws, technological advances do not give this Court the authority to supplant the legislature. Thus, our application of CPLR 302(a)(2) must be in accord with the legislative intent, structure of the statute, and its prior application.
As relevant here, the legislative history of CPLR 302(a)(2) demonstrates that it was specifically enacted to extend jurisdiction to nonresidents who have committed tortious acts while present in New York (see NY St Advisory Comm on Practice & Procedure, Report of the Temporary Commn on the Courts 37, 39 [1958] ["tortious acts within the state"]). Importantly, the Court of Appeals has held that the "plain and precise" language "commits a tortious act within the state" means that CPLR 302(a)(2) confers jurisdiction over a nondomiciliary that was physically present in New York when the tort occurred (see Feathers v McLucas, 15 NY2d 443, 460 [1965]; Platt Corp. v Platt, 17 NY2d 234, 237-238 [1966]; Kramer v Vogl, 17 NY2d 27, 31 [1966]; Ferrante Equip. Co. v Lasker-Goldman Corp., 26 NY2d 280, 285 [1970]). Using this guidance, New York courts, both state and federal, have consistently interpreted CPLR 302(a)(2) jurisdiction narrowly, and have held that to qualify under this subsection, a defendant's act or omission must have occurred while defendant was physically present within the state (see Pramer, 76 AD3d at 97; Peters, 101 AD3d at 404; National Union Fire Ins. Co. of Pittsburgh, 157 AD2d at 572; Bauer Indus. v Shannon Luminous Materials Co., 52 AD2d 897, 898 [2d Dept 1976]; WCVAWCK-Doe v Boys & Girls Club of Greenwich, Inc., 216 AD3d 1 [2d Dept 2023] [CPLR 302(a)(2) jurisdiction satisfied where nondomiciliary defendant, while present within the geographical boundaries of New York, committed a tortious act when it failed to supervise the members, resulting in plaintiff being sexually assaulted by another member]; Bartosiewicz [*9]v Nelsen, 564 F Supp 3d 287, 297 [WD NY 2021] [Alleged fraud occurred outside of New York and therefore CPLR 302(a)(2) did not allow court to exercise personal jurisdiction over defendant]).
Although this Court has, on narrow grounds, held that a financial fraud tort can be deemed to have occurred within this state, when neither a defendant nor its agents had physical contacts within the boundaries of New York (see Banco Nacional Ultramarino v Chan, 169 Misc 2d 182, 187 [Sup Ct, NY County 1996], affd 240 AD2d 253 [1st Dept 1997]), this application of CPLR 302(a)(2) applies to the narrow circumstance where an out-of-state defendant uses a modern-day financial system and a New York based bank account to commit a financial fraud tort within the boundaries of New York (cf. Bluewaters Communications Holdings, LLC v Ecclestone, 122 AD3d 426, 427 [1st Dept 2014] [Indirect use of New York banking system for bribes does not constitute the commission of a tort within New York that would establish personal jurisdiction over nondomiciliary defendants pursuant to CPLR 302(a)(2)]). Tellingly, CPLR 302(a) has not been amended by the legislature to accommodate the technological advancements cited by plaintiff.[FN6]

Based on the record before this Court, it is undisputed that the alleged fraudulent statements were made outside of New York and that the individual defendants communicated with plaintiff solely in their capacity as principals of RPP. Therefore, we find that plaintiff has failed to demonstrate a basis for imposing long-arm jurisdiction over the individual defendants pursuant to CPLR 302(a)(2), and the motion court should have granted the individual defendants' motion to vacate the default judgment pursuant to CPLR 5015(a)(4) and dismissed the cause of action as against them pursuant to CPLR 3211(a)(8). In light of our determination, we need not reach the issue of whether the exercise of personal jurisdiction comports with due process or whether a discretionary vacatur was warranted as it relates to the individual defendants.
Defendant RPP
Under CPLR 5015(a)(1), a court may relieve a party from a judgment on the ground of excusable default. Although there is a strong public policy favoring the resolution of cases on the merits, a defendant moving to vacate a default must satisfy the two-pronged test of showing both (1) a reasonable excuse for the default; and (2) a meritorious defense to the action (see Johnson-Roberts v Ira Judelson Bail Bonds, 140 AD3d 509, 509 [1st Dept 2016]; Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co., 67 NY2d 138, 141 [1986]).
The determination of whether a reasonable excuse and meritorious claim or defense have been demonstrated lies within the discretion of the motion court (Goldman v Cotter, 10 AD3d 289, 291 [1st Dept 2004]). While this determination is a two-part inquiry, the court must first decide whether a reasonable excuse has been offered. This determination is "sui generis and should be based on all relevant factors, [*10]among which are the length of the delay chargeable to the movant, whether the opposing party has been prejudiced, whether the default was willful, and the strong public policy favoring the resolution of cases on the merits" (Chevalier v 368 E. 148th St. Assoc., LLC, 80 AD3d 411, 413-414 [1st Dept 2011]).
Although this is a discretionary determination, this Court may substitute its own discretion for that of the motion court, even in the absence of finding an abuse of discretion, if we disagree with the court's finding or determine that it has not correctly considered all the relevant factors (Gecaj v Gjonaj Realty & Mgt. Corp., 149 AD3d 600, 602 [1st Dept 2017]). Here, however, we find that, under the circumstances of this case, the motion court providently exercised its discretion in declining to vacate the default judgment, as RPP failed to provide a reasonable excuse for its default (see CPLR 5015[a][1]; Terrapin Indus., LLC v Bank of N.Y., 137 AD3d 569, 570 [1st Dept 2016]).
The sole basis of RPP's reasonable excuse for its failure to answer the amended complaint or to oppose the motion for entry of judgment is law office failure. However, defendant raised this excuse for the first time on appeal and it is therefore unpreserved (see Lopez v Mama's Fried Chicken, Inc., 202 AD3d 597, 597 [1st Dept 2022]). In any event, the excuse is unavailing because defendants did not retain counsel until after plaintiff obtained a default judgment.
Further, defendant's alleged attempt to settle the action after the return date of plaintiff's motion for a default judgment did not constitute a reasonable excuse for the defaults in answering or opposing the motion (GEM Invs. Am., LLC v Marquez, 180 AD3d 513, 513 [1st Dept 2020]). The record also demonstrates that defendants did not move to vacate the default until nearly 11 months after their time to answer the complaint had expired (Board of Mgrs. of Hudson View E. Condominium v HSBC Bank USA, 158 AD3d 548, 549 [1st Dept 2018]; cf. Gecaj, 149 AD3d at 602 [in a decision reversing the grant of a motion to vacate a default judgement, this court noted that it took two months for the defendant to file their motion]). Thus, defendants failed to proffer an acceptable excuse for their default, and we need not reach the issue of whether they have a meritorious defense (see U.S. Bank Trust N.A. v Rivera, 187 AD3d 624, 625 [1st Dept 2020]).
Accordingly, the order of the Supreme Court, New York County (Arlene Bluth, J.), entered November 16, 2021, which denied defendants' motion to vacate a default judgment entered against them, should be modified, on the law, defendants Stuart Richard Polsky's and Scott Warren Polsky's motion to vacate the default judgment
pursuant to CPLR 5015(a)(4) should be granted, and upon vacatur, the action against them dismissed, and otherwise affirmed, with costs.
Order, Supreme Court, New York County (Arlene Bluth, J.), entered November 16, 2021, modified, on the law, defendants Stuart [*11]Richard Polsky's and Scott Warren Polsky's motion to vacate the default judgment pursuant to CPLR 5015(a)(4), granted, and upon vacatur, the action against them dismissed, and otherwise affirmed, with costs.
Opinion by Pitt-Burke, J. All concur.
Kern, J.P., Friedman, Kennedy, Scarpulla, Pitt-Burke, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 31, 2023

Footnotes

Footnote 1: Unlike a motion made pursuant to CPLR 5015(a)(1), which must be made within one year of service on defendant of the default judgment with notice of entry, a motion made pursuant to CPLR 5015(a)(4) can be made at any time (see Caba, 63 AD3d at 580; see also David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5015:3, at 205—206). While this Court has found that there are in fact limits to the extent of the delay that will be accepted, the delay in the instant appeal does not warrant such a determination (see HMC Assets, LLC v Trick, 199 AD3d 454 [1st Dept 2021]).

Footnote 2: As set forth in International Shoe Co. v Washington (326 US 310, 316 [1945]), due process requires that a nondomiciliary have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" (internal quotation marks omitted).

Footnote 3: Although plaintiff contends that it sustained substantial losses as a result of the individual defendants' conduct, for jurisdiction purposes, this court is "concerned solely with the problem of the court's jurisdiction over the person of a nonresident defendant and not with the question of his ultimate liability to a particular plaintiff" (see Longines-Wittnauer Watch Co., 15 NY2d at 460).

Footnote 4: While this information would be relevant to a minimum contacts and constitutional inquiry, we need not reach this analysis if the statutory prerequisite for personal jurisdiction has not been reached.

Footnote 5: As noted above, this information would be relevant to this Court's due process/minimum contacts analysis if in fact the requirements of CPLR 302(a)(2) were met. However, the totality of the circumstances does not provide plaintiff with a basis for imposing long-arm jurisdiction over the individual defendants, so this court need not determine whether the exercise of personal jurisdiction comports with constitutional due process.

Footnote 6:The defendant's lack of an in-state physical presence does not foreclose an injured New York plaintiff from suing the nondomiciliary for tortious conduct. The legislature, recognizing that a nondomiciliary might commit a tort outside of the boundaries of this state that injures a resident in this state, enacted CPLR 302(a)(3) (see Jud Conf of St of NY Mem in Support, Bill Jacket, L 1966, ch 590 at 17-18, 1966 NY Legis Ann at 4). To be clear, we are not implying that plaintiff's arguments would have fared any better under a CPLR 302(a)(3) jurisdictional inquiry nor is that question before us. That plaintiff could have raised an argument under CPLR 302(a)(3), reaffirms our position that it would be impolitic of this Court to expand CPLR 302(a)(2) jurisdiction to include a situation whereas here, a fraudulent statement is made outside of the boundaries of this state.